**Rosa R. COLON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–71.**

United States Court of Veterans Appeals.

April 17, 1996.

William Ramirez–Hernandez, Rio Piedras, PR, was on the brief for the appellant.

Mary Lou Keener, General Counsel, Atlanta, GA; Ron Garvin, Assistant General Counsel; Thomas. A. McLaughlin, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the brief for the appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Rosa Colon, appeals a September 21, 1993, decision by the Board of Veterans' Appeals (BVA or Board) denying entitlement to recognition as the surviving spouse of veteran Manuel Maldonado–Cortes. Record (R.) at 4. The appellant filed a brief, and the Secretary filed a motion for summary affirmance as well as a brief. For the reasons that follow, the Court will deny the Secretary's motion and vacate the decision of the Board and remand the matter.

## I. Background

The veteran served on active duty in the U.S. Army from December 1953 to December 1955. R. at 12. A certificate of marriage, indicating that a marriage ceremony had been performed, was issued to the appellant and the veteran in February 1954. R. at 18. A February 1987 affidavit stated that the submitted document was a true copy of the original. R. at 17. The appellant was divorced from the veteran in July 1989. R. at 20–21 (copy of Superior Court of Puerto Rico divorce decree with English translation).

In August 1989, the veteran submitted to a Department of Veterans Affairs (VA) regional office (RO) an application for non-service-connected pension in which he indicated that he had been married once, was then divorced, and did not live with his former spouse. R. at 23–26. The VARO approved the pension claim in October 1989. R. at 31. In a September 1990 application for im-

proved pension benefits, the veteran indicated that he was not married. R. at 33.

The veteran died in November 1990. R. at 40. In December 1990, the appellant submitted to the RO an application for death pension. R. at 46–49. She stated: "I divorced my husband on 7/21/89, however he did not abandon the house. He remained in the house until his death. I attended him during his sickness period." *Ibid.* An April 1991 RO administrative decision concluded that the appellant was not the widow of the veteran for VA purposes because evidence in the file showed different addresses for the appellant and the veteran after their divorce, and because common-law marriage had no legal standing in Puerto Rico. R. at 66–67. The appellant filed a Notice of Disagreement and submitted statements from several people to the effect that the appellant and the veteran had resided together from the time of their divorce until the time of the veteran's death. R. at 73–89.

At a February 1992 RO hearing, the appellant, two of her children, and a neighbor testified under oath that the veteran had lived with her until his death. R. at 106–09. In March 1992, the RO confirmed its original denial of death pension. R. at 115. The appellant then submitted to the RO a March 1992 statement asserting that she had agreed to a divorce only because of the veteran's threats of violence against her and her children. R. at 118.

The BVA, in the September 1993 decision here on appeal, determined that the veteran and the appellant had married in 1954 and divorced in July 1989, and that the "appellant's subsequent cohabitation with the veteran ... did not constitute a valid marriage." R. at 4–5. The Board concluded that, even if the appellant and the veteran had cohabited from the time of the divorce until the veteran died, the appellant did not qualify as a "surviving spouse" as defined in 38 U.S.C. § 101(3) and 38 C.F.R. § 3.50 (1992) because the record showed that she did "not consider herself to be legally married to the veteran following their divorce" and a person "who does not believe that she is married cannot be said to have formed a common-law marriage". R. at 7. As evidence for its conclusion that the appellant did not believe herself to be married to the veteran after their divorce, the Board made the following findings: (1) "[S]ince the appellant had once undergone a marriage ceremony with the veteran, she must have known that another marriage ceremony was the accepted means of forming a legal marriage in Puerto Rico"; (2) "she had undergone a divorce in a court of law"; (3) on her application for death pension benefits, she had stated that she had been married once and that the marriage had ended in divorce in 1989, and she had not listed any common-law marriage; and (4) at her hearing, she "did not make any statement to the effect that she believed that she had entered into a second marriage to the veteran by continuing to live with him following their divorce". R. at 6–7.

## II. Analysis

■ The "surviving spouse of each veteran of a period of war who met the service requirements prescribed in [38 U.S.C. § 1521(j) ]" is entitled to receive VA death pension benefits. 38 U.S.C. § 1541(a); *see also* 38 C.F.R. § 3.54 (1995). The veteran served from December 1953 to December 1955, and that time period fell during a "period of war" as defined in 38 U.S.C. § 101(9), (11). His period of service meets the length-of-service requirements of 38 U.S.C. § 1521(j).

A "surviving spouse" is defined, in part, as follows:

[A] person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse) and who has not remarried....

38 U.S.C. § 101(3); *see also* 38 C.F.R. § 3.50 (1995) ("the term *surviving spouse* means a person of the opposite sex who is a widow or widower provided the marriage meets the requirements of [38 C.F.R.] § 3.1(j)...."). A "spouse" is "a person of the opposite sex who is a wife or husband." 38 U.S.C. § 101(31); *see also* 38 C.F.R. § 3.50(a), (c).

In determining whether a person is or was the spouse of a veteran, the validity of the marriage for VA purposes is determined "according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued." 38 U.S.C. § 103(c); *see also* 38 C.F.R. § 3.1(j) (1995).

 The Court has previously held that "a veteran's spouse must supply proof of her or his marital status" before attaining the status of a claimant. *Sandoval v. Brown,* 7 Vet.App. 7, 9 (1994) (citing *Aguilar v. Derwinski,* 2 Vet.App. 21, 23 (1991)); *see also Jones v. Brown,* 8 Vet.App. 558, 561 (1996) (citing *Aguilar* for proposition that surviving spouse is eligible claimant for accrued benefits). The appellant here supplied certifications as to her 1954 marriage to the veteran, and the Secretary has not contested the validity of the 1954 marriage. *See* 38 C.F.R. § 3.205 (1995) (proof of marriage); *see also* 38 U.S.C. § 5124 (Secretary may accept written statement of claimant as proof of existence of marriage). She has thus attained the status of a claimant. *See Sandoval, supra.* Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.159 (1994); *Littke v. Derwinski,* 1 Vet.App. 90, 91–92 (1990). "When the status of claimant is established and the claim is well grounded", then the duty to assist arises. *Sandoval, supra.*

 The appellant, citing 38 U.S.C. § 103(a), argues that, notwithstanding the July 1989 divorce decree, she was the spouse of the veteran at the time of his death because she and the veteran had lived together from the time of their marriage in 1954 until his death in 1990. Brief (Br.) at 13. Section 103(a) provides:

Whenever, in the consideration of any claim filed by a person as the widow or widower of a veteran for gratuitous death benefits under laws administered by the Secretary, it is established by evidence satisfactory to the Secretary that such person, without knowledge of any legal imped-

iment, entered into a marriage with such veteran which, but for a legal impediment, would have been valid, and thereafter cohabited with the veteran for one year or more immediately before the veteran's death, ... the purported marriage shall be deemed to be a valid marriage....

38 U.S.C. § 103(a); *see also* 38 C.F.R. § 3.52 (1995). Furthermore:

(c) *Marriages deemed valid.* ... the claimant's signed statement that he or she had no knowledge of an impediment to the marriage to the veteran will be accepted, in the absence of information to the contrary, as proof of that fact.

38 C.F.R. § 3.205(c). The appellant is apparently arguing that, although she has now conceded that common-law marriages are not valid under Puerto Rican law (Br. at 13), she was unaware of that fact when she cohabited with the veteran after the divorce decree was issued and thus an otherwise invalid common-law marriage should be deemed valid.

This case presents a factual situation similar to that in *Sandoval, supra,* where the appellant, who had been married to the veteran for less than one year at the time of the veteran's death, argued that her cohabitation with the veteran before the marriage should be deemed a marriage. In *Sandoval,* the Court noted that:

[T]he VA General Counsel, in a VA memorandum, ha[s] previously conceded that for purposes of section 103 the requirement of a marriage ceremony by a jurisdiction which does not recognize common-law marriage constitutes a legal impediment to that marriage. *See* VA Gen. Coun. Prec. 58–91 (July 7, 1991). The General Counsel opinion relies upon an Attorney General opinion which stated:

The language of section 103(a) is not in terms limited to any particular legal impediment to a marriage. That language is broad enough to cover the instant situation, and the legislative history does not suggest a narrower reading.

. . . .

Nor is there language elsewhere in section 103 which supports a narrow reading of the term "legal impediment...."

42 Op. Att'y Gen. 37 (1961).

*Sandoval,* 7 Vet.App. at 10. The Court vacated the BVA decision and remanded the matter because:

> [T]he Secretary has failed to comply with 38 C.F.R. § 3.205(c) by neither providing the appellant with an opportunity to submit a "signed statement that . . . she had no knowledge of an impediment to the marriage . . ." nor, assuming the submission of such a statement, presenting "information to the contrary." 38 C.F.R. § 3.205(c); *see* 38 U.S.C. § 7104. Furthermore, the Board did not provide adequate reasons [or] bases for its inference that the appellant had the requisite knowledge of a legal impediment to the marriage. 38 U.S.C. § 7104(d)(1); *Gilbert* [*v. Derwinski,* 1 Vet.App. 49, 57 (1990) ].

*Ibid.*

Similarly, in this case the BVA has not provided the appellant with an opportunity to submit a signed statement pursuant to § 3.205(c), or, in the event of such a statement, provided an adequate statement of reasons or bases on the question whether she had the requisite knowledge of the legal impediment. Therefore, as in *Sandoval,* the matter must be remanded for the Secretary to fulfill the duty to assist in accordance with this opinion.

### III. Conclusion

On consideration of the foregoing, the record on appeal, and the briefs of the parties, the Court denies the Secretary's motion for summary affirmance, and vacates the September 21, 1993, BVA decision and remands the matter for expeditious further development and readjudication, on the basis of all applicable law and regulation, *see Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991), and issuance of a new decision supported by an adequate statement of reasons or bases—all consistent with this opinion and in compliance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (requiring Secretary to provide for "expeditious treatment" for claims "remanded" by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the [claimant] will be free to submit additional evidence

and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.