# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-3628

———————

Geraldine Gainey,

        Appellant,

    v.

Jo Anne B. Barnhart, Commissioner,
Social Security Administration,

        Appellee.

\*    Appeal from the United States
\*    District Court for the
\*    Eastern District of Arkansas.

\*    [PUBLISHED]

———————

Submitted: May 17, 2002
Filed: June 14, 2002 (Corrected: July 16, 2002)

———————

Before BOWMAN, MAGILL, and BYE, Circuit Judges.

———————

PER CURIAM.

Geraldine Gainey ("Geraldine") appeals from the district court's[1] affirmance of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for social security widow's benefits under 42 U.S.C. § 402(e) of the Social Security Act. The central issue in this case is whether Geraldine can be considered the widow of deceased wage earner Everett Leach

———————

[1]The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

("Leach") by virtue of a common-law marriage due to the legal impediment of two prior undissolved marriages. Because the Commissioner's decision is supported by substantial evidence, we affirm.

I.

On April 10, 1950, the state of Michigan issued a marriage license to Geraldine and Billy Joe Smith ("Smith"). According to Geraldine, sometime in 1953, she and Smith separated and she began living with Leach in Michigan. In 1957, while she was living with Leach, Geraldine gave birth to a baby girl, Deborah Smith Tolbert. The birth certificate shows Deborah's last name as Smith and her father's name as Bill Joe Smith. Geraldine testified, however, that Leach is Deborah's father and she used the name Smith on the birth certificate because she could not afford to pay the hospital bill.

Geraldine continued to live with Leach in Michigan until sometime in 1963, when she married Archie Gainey ("Archie") and moved to Chicago, Illinois.[2] Geraldine states that her marriage to Archie lasted only three months, at which time she returned to Michigan to live with Leach until Leach's death on March 21, 1995. Geraldine alleges that it was her intent to marry Leach and that she and Leach held themselves out as husband and wife to both their family and friends.

Sometime in 1995, Geraldine filed an application for widow's insurance benefits and the lump-sum death benefit as the common-law widow of Leach pursuant to 42 U.S.C. § 402(e). Geraldine's application was denied initially and on reconsideration by the state agency and the Social Security Administration. The

---

[2]Geraldine testified that she married Archie in 1967. However, the Commissioner found that this event must have occurred in 1963 because in May 1963, Geraldine requested a new social security card showing her last name as Gainey. The exact date of this event is irrelevant for our purposes.

administrative law judge denied Geraldine's claim, reasoning that Geraldine could not be considered the widow of Leach by virtue of a valid common-law marriage because she was unable to enter into such a marriage because of the legal impediment of two prior undissolved marriages. The Appeals Council denied Geraldine's request for a review, and the district court affirmed the Commissioner's decision.

## II.

To receive widow's benefits, Geraldine must demonstrate that she is the widow of the insured wage earner based on the laws of the state where the insured had a permanent home at the time of his death. See 20 C.F.R. § 404.345. Moreover, because Geraldine and Leach never had a formal marriage ceremony, under federal regulations, Geraldine must demonstrate the existence of a common-law marriage, which requires evidence that: (1) the marriage was considered valid under the appropriate state law,[3] (2) the parties were free to marry, (3) the parties considered themselves married, and (4) the parties lived together as husband and wife. 20 C.F.R. § 404.726.

The district court affirmed the ALJ's determination that Geraldine failed to establish the existence of a common-law marriage because she provided no competent evidence to demonstrate that her prior marriage to Smith was dissolved and that she was therefore free to enter into a common-law marriage with Leach. Under federal

---

[3]Both parties agree that Michigan law is applicable. Prior to January 1, 1957, Michigan recognized common-law marriages. Ford v. Wagner, 395 N.W.2d 72, 74 (Mich. Ct. App. 1986). Under Michigan law, a valid common-law marriage requires clear and convincing evidence of the existence of an agreement to live together as husband and wife, made by persons who are free to marry, and their subsequent open cohabitation together as husband and wife. In re Leonard Estate, 207 N.W.2d 166, 168 (Mich. Ct. App. 1973) (citing People v. Spencer, 165 N.W. 921, 923 (Mich. 1917)).

regulations, preferred evidence that a marriage has ended is either (1) a certified copy of the divorce decree or annulment, or (2) evidence of death of the former spouse. 20 C.F.R. § 404.728(b).  If preferred evidence cannot be obtained, an explanation as to why the preferred evidence cannot be obtained is required along with other convincing evidence that the marriage has ended.  20 C.F.R. § 404.728(c).  In deciding whether evidence is convincing, the following factors are taken into consideration: (1) whether the information contained in the evidence was given by a person in a position to know the facts; (2) whether there was any reason to give false information when the evidence was created; (3) whether the information contained in the evidence was given under oath, or with witnesses present, or with knowledge that there was a penalty for giving false information; (4) whether the evidence was created at the time the event took place or shortly thereafter; (5) whether the evidence has been altered; and (6) whether the information contained in the evidence agrees with other available evidence, including agency records.  20 C.F.R. § 404.708.

It is undisputed that Geraldine failed to offer any "preferred evidence" that either her marriage to Smith or Archie was dissolved.  Thus, we look to Geraldine's other evidence for a determination of whether substantial evidence supports the Commissioner's decision that her proffered evidence was unconvincing.  Keller v. Shalala, 26 F.3d 856, 858 (8th Cir. 1994).

To demonstrate that her marriage to Smith was dissolved, Geraldine essentially relies on a written statement made by Smith to the Social Security Administration that he divorced Geraldine in Yuma, Arizona in 1953.  While undated, Smith's statement was apparently given sometime in 1995 or 1996.  Although Smith's statement was given with the knowledge that a penalty exists for giving false information, and obviously Smith is a person in a position to know the facts, other factors weigh against the credibility of this evidence.  First, the evidence was given over forty years after the event supposedly occurred.  Second, Smith may have had a reason to provide

-4-

false information because he was married two times after his marriage to Geraldine and would not wish to be viewed as a bigamist. Third, Smith's statement does not agree with agency records, which indicate that the courthouse in Yuma, Arizona was unable to locate a record of a divorce between Geraldine and Smith. Finally, Geraldine's own testimony is inconsistent with Smith's statement as she alleged that Smith told her that he divorced her in Mexico.

Geraldine also argues that the fact that Smith remarried two additional times after his marriage to her demonstrates that Smith dissolved their marriage leaving her free to enter into a common-law marriage with Leach. This evidence, however, is also unconvincing. In addition to the factors discussed above, Smith's first marriage following his marriage to Geraldine occurred on January 1, 1959. Thus, it is possible that Smith could have divorced Geraldine after January 1, 1957, thereby precluding the commencement of a common-law marriage in the state of Michigan.

Nevertheless, even assuming arguendo that Geraldine's evidence demonstrating that her marriage to Smith was dissolved, her marriage to Archie in 1963 is even more problematic. While we would concede that Geraldine's marriage to Archie indicated her belief that her marriage to Smith was dissolved, it also tends to demonstrate that Geraldine did not believe that she was married to Leach. Moreover, Geraldine returned to Michigan and allegedly resumed her common-law marriage to Leach in 1964. By this time, however, Michigan no longer recognized common-law marriages. Geraldine claims, however, that Archie annulled their marriage at some point in 1968 in Mexico. If Geraldine were correct in that her marriage to Archie was annulled, then it would be possible for her to argue that there was no interruption in her alleged common-law marriage to Leach. Geraldine's only evidence of such an annulment, however, is her statement that a friend of Archie's told her that Archie annulled their marriage. Geraldine's continued use of Archie's name, i.e., Gainey, since 1963, however, speaks louder than her after-the-fact explanation.

## III.

Because the Commissioner's decision is supported by substantial evidence, in this case a lack of convincing evidence that Geraldine was free to enter into a common-law marriage with the deceased wage earner Leach, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.