# United States Court of Appeals
# for the Federal Circuit

---

**MICHELE D. BURDEN,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7096

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 09-3233, Chief Judge Bruce E. Kasold.

- - - - - - - - - - - - - - - - - - - - -

**HELEN C. COLEMAN,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7122

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 09-3480, Judge Robert N. Davis.

---

Decided:   July 16, 2013

———————————————

MARTIN V. TOTARO, MoloLamken, LLP, of Washington, DC, argued for claimant-appellant in appeal no. 2012-7096.  With him on the brief was ROBERT K. KRY.

ELIZABETH M. HOSFORD, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee in appeal no. 2012-7096.  With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.  Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and TRACEY P. WARREN, Attorney, United States Department of Veteran Affairs, of Washington, DC.  Of counsel was KATY M. BARTELMA, Trial Attorney, United States Department of Justice, of Washington, DC.

JENNIFER C. TEMPESTA, Baker Botts, L.L.P., of New York, New York, argued for claimant-appellant in appeal no. 2012-7122.

KATY M. BARTELMA, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee in appeal no. 2012-7122.  With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director.  Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and LARA K. EILHARDT, Attorney, United States Department of Veterans Affairs, of Washington, DC.  Of counsel were ELIZABETH MARIE HOSFORD, Senior Trial Counsel, United States Department of Justice, of Wash-

ington, DC; and JONATHAN ELLIOTT TAYLOR, Attorney, United States Department of Veteran Affairs, of Washington, DC.

———————————

Before DYK, MAYER, and MOORE, *Circuit Judges.*

MAYER, *Circuit Judge.*

Michele D. Burden ("Mrs. Burden") and Helen C. Coleman ("Mrs. Coleman") appeal final judgments of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying their claims for dependency and indemnity compensation ("DIC"). *See Burden v. Shinseki*, 25 Vet. App. 178 (2012) ("*Burden Decision*"); *Coleman v. Shinseki*, No. 09-3480, 2012 U.S. App. Vet. Claims LEXIS 350 (Feb. 29, 2012) ("*Coleman Decision*"). Because we conclude that the Veterans Court correctly determined that state law, including state law evidentiary burdens, must be applied in determining the validity of a purported common law marriage, we affirm.

## I. BACKGROUND

### A. MRS. BURDEN'S APPEAL

Louis Burden ("Burden"), a Vietnam veteran, served on active duty in the United States Army from January 1948 until October 1968. He married Mrs. Burden in a ceremonial marriage on April 27, 2004. Two months later, on June 30, 2004, Burden died. In August 2004, Mrs. Burden applied for DIC benefits, but a regional office ("RO") of the Department of Veterans Affairs ("VA") denied her claim, concluding that she was ineligible for benefits because she had not been married to Burden for at least one year prior to his death. *See* 38 U.S.C. § 1102(a) ("No compensation shall be paid to the surviving spouse of a veteran under this chapter unless such surviving spouse was married to such veteran . . . for one year or more[.]").

In response, Mrs. Burden submitted a "Statement of Marital Relationship" in which she asserted that she and Burden had been living in a common law marriage for five years prior to his death. She also provided the RO with a number of lay statements supporting her claim that she had lived with Burden as man and wife in a common law marriage for several years prior to his death. After the RO again denied her claim, Mrs. Burden appealed to the Board of Veterans' Appeals ("board"). She provided the board with additional evidence to support her claim that she had entered into a valid common law marriage prior to the date of her ceremonial marriage, including a photocopy of a church raffle ticket that had been purchased in 2001 by "Lou and Michele Burden," and a statement from a long-time friend of the Burdens who asserted that the couple had lived "as husband and wife" during the last six years of Burden's life.

Although the board acknowledged that Mrs. Burden had provided some evidence to support her claim that she had entered into a common law marriage prior to the date of her ceremonial marriage, it concluded that such evidence did not constitute the "clear and convincing proof" required to establish a valid common law marriage under Alabama law. The board noted that during his lifetime Burden had "provided no statements suggesting that he had consented to enter" into a common law marriage. To the contrary, Burden had indicated on several occasions that he was not married. In October 1998, Burden told his private physician that he was single and did not "want to get too involved." In March 1999, Burden informed his physician that he had a "girlfriend," but did not mention that he had a wife. In a November 2002 application for VA benefits, Burden indicated that he was "[d]ivorced" and stated that his brother, Anthony Burden, was his "nearest relative." After reviewing this evidence, the board concluded that "[t]here was no indication that

[Burden] considered himself married" prior to the time of his 2004 ceremonial marriage.

Mrs. Burden then appealed to the Veterans Court. She asserted that the board erred in applying Alabama's clear and convincing proof standard to the question of whether she had entered into a valid common law marriage. In her view, the board should instead have applied the "benefit of the doubt" rule contained in 38 U.S.C. § 5107(b) to all issues related to her eligibility for DIC benefits. *Burden Decision*, 25 Vet. App. at 181-82. Mrs. Burden argued, moreover, that the board failed to ensure that she was provided notice, pursuant to 38 U.S.C. § 5103(a), of how to substantiate her claim. *Id.* at 188-89.

The Veterans Court affirmed the board's decision, concluding that it had properly applied Alabama's clear and convincing proof standard to the question of whether the Burdens had entered into a valid common law marriage prior to their 2004 ceremonial marriage. *Id.* at 182-86. The court determined that section 5107(b)'s benefit of the doubt rule does not apply when determining the existence of a valid common law marriage because "Congress specifically addressed the standard of proof that must be applied by the Secretary" when it enacted 38 U.S.C. § 103(c). *Burden Decision*, 25 Vet. App. at 183. The court also rejected Mrs. Burden's argument that the VA had failed to provide her with adequate notice of how to substantiate her claim, explaining that she "had actual knowledge of what was required to establish a common law marriage under Alabama law as evidenced by her submission of evidence and arguments during the adjudication of her claim" before the board. *Id.* at 189.

## B. Mrs. Coleman's Appeal

Willie L. Coleman ("Coleman") served on active duty in the United States Army from October 1960 until December 1963. He married Mrs. Coleman on November 28, 1969, and the couple had eight children. The Colemans

divorced in 1982. Mrs. Coleman asserts, however, that she reconciled with Coleman after their divorce and that they lived together as husband and wife in a common law marriage until the time of his death in June 2001.

In July 2001, Mrs. Coleman filed a claim with the VA seeking DIC benefits, as well as death pension and accrued benefits. The RO denied her claim, however, after concluding that she was not married to Coleman at the time of his death. On appeal, the board affirmed. The board explained that the law of Alabama, where the Colemans resided, must be applied to the question of whether they had entered into a valid common law marriage, and that Alabama requires "clear and convincing proof" of the elements of such a marriage. Although it acknowledged that the Colemans had lived together for periods after their divorce and that Coleman's death certificate indicated that he was married at the time of his death, the board determined that there was insufficient evidence to establish that the Colemans had entered into a valid common law marriage after their divorce. The board noted that in 1983 Coleman informed the VA that he lived alone, and a 1990 VA hospitalization report stated that Coleman was divorced and lived with his grandmother. Furthermore, when Mrs. Coleman filed a claim in 1994 seeking apportionment of Coleman's VA disability benefits, she asserted that she was the "ex-wife of the veteran." According to the board, such facts were "inconsistent with finding [that Mrs. Coleman] had an agreement or mutual understanding with [Coleman] to enter into a marriage relationship following their divorce in 1982."

Mrs. Coleman then appealed to the Veterans Court, arguing that the board had failed to consider all the evidence of record in denying her claim for VA benefits. The court affirmed the board's decision, concluding that it had not "erred in any facet of its evaluation of the evidence" or in its "application of law and regulation."

*Coleman Decision*, 2012 U.S. App. Vet. Claims LEXIS 350, at *6.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Our jurisdiction to review decisions of the Veterans Court is circumscribed by statute. *See* 38 U.S.C. § 7292. Although we are vested with authority to decide all relevant questions of law, we are without jurisdiction, unless an appeal presents a constitutional issue, to review factual determinations or the application of law to the facts of a particular case. *Id.*; *see Reeves v. Shinseki*, 682 F.3d 988, 992 (Fed. Cir. 2012); *Morris v. Shinseki*, 678 F.3d 1346, 1351 (Fed. Cir. 2012). We conduct a de novo review of the Veterans Court's legal determinations. *Rodriguez v. Peake*, 511 F.3d 1147, 1152 (Fed. Cir. 2008).

### B. DETERMINING THE VALIDITY OF A MARRIAGE

For purposes of obtaining DIC benefits, the validity of a marriage is determined "according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued." 38 U.S.C. § 103(c).[1] Because both the Burdens and Colemans were residents of Alabama, there is no dispute that Alabama law must be

---

[1]    Section 103(c) provides:

In determining whether or not a person is or was the spouse of a veteran, their marriage shall be proven as valid for the purposes of all laws administered by the Secretary *according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued.*

38 U.S.C. § 103(c) (emphasis added).

applied in determining whether they entered into valid common law marriages. Under Alabama law, the four elements of a common law marriage are: (1) capacity, meaning that both parties must be at least fourteen years old and mentally competent; (2) a present agreement or mutual consent to enter into the marriage relationship; (3) a public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption of marital duties and obligations. *Creel v. Creel*, 763 So. 2d 943, 946 (Ala. 2000); *Adams v. Boan*, 559 So. 2d 1084, 1086 (Ala. 1990). Furthermore, Alabama requires "clear and convincing proof" to establish the validity of a common law marriage. *Etheridge v. Yeager*, 465 So. 2d 378, 380 (Ala. 1985).

On appeal, both Mrs. Burden and Mrs. Coleman acknowledge that the VA must look to Alabama law in determining the existence of a valid common law marriage. They argue, however, that "[a]lthough the elements of common-law marriage derive from state law, evidentiary issues are governed by federal law." In their view, the VA should have applied section 5107(b)'s "benefit of the doubt" rule, rather than Alabama's clear and convincing proof standard, when determining whether they had met the prerequisites for establishing a valid common law marriage. In support, they argue that Alabama's clear and convincing proof standard has no place in the uniquely pro-claimant system for adjudicating veterans' claims.

We do not find this reasoning persuasive. As the Veterans Court correctly concluded, section 103(c) requires the VA to apply state law, including state law evidentiary burdens, in determining whether the criteria for a valid common law marriage have been satisfied. *See Burden Decision*, 25 Vet. App. at 183; *Coleman Decision*, 2012 U.S. App. Vet. Claims LEXIS 350, at *2 n.1.

## C. THE STATUTORY LANGUAGE

"If the intent of Congress is clear, that is the end of the matter; for [a] court . . . must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (footnote omitted); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Section 103(c) unambiguously provides that the validity of a marriage must be "proven" in accordance with "the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued." In other words, the statute requires claimants to prove—i.e., to provide satisfactory evidence of—the existence of a valid marriage as required by state law. *See* Black's Law Dictionary 1345 (9th ed. 2009) (stating that the word "prove" means "[t]o establish or make certain; to establish the truth of (a fact or hypothesis) by satisfactory *evidence*" (emphasis added)); *see also id.* at 635 (stating that the term "evidence" means "[s]omething (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact"). Simply put, a claimant cannot "prove" that his marriage is valid under the laws of a particular state unless he supplies the evidence or "proof" that state law requires.

Certain statutory provisions give the VA broad discretion to determine the evidence necessary to substantiate the facts and circumstances pertinent to the award of VA benefits. *See* 38 U.S.C § 108(b) (requiring "evidence satisfactory to the Secretary" to establish that a veteran who has been missing for an extended period has died); *id.* § 6104(a) (providing for the forfeiture of VA benefits if it is established "by evidence satisfactory to the Secretary" that a veteran is guilty of treason or other specified

offenses).[2]  In section 103(c), however, Congress did not grant the VA authority to determine the appropriate evidentiary standards, but instead specifically provided that the validity of a marriage must be "proven" according to state law.

Alabama recognizes common law marriage and views it "as a co-equal, alternate method of validating the connubial union of two people." *Piel v. Brown*, 361 So. 2d 90, 93 (Ala. 1978); *see also Adams*, 559 So. 2d at 1087 ("Once the man and woman have established a present agreement or mutual consent to enter into the marriage relationship, permanent and exclusive of all others, a common law marriage is equal in validity with a ceremonial marriage."). Because of "the serious nature of the marriage relationship," however, Alabama "courts will closely scrutinize a claim of common-law marriage and require clear and convincing proof thereof." *Etheridge*, 465 So. 2d at 380 (citations and internal quotations omitted); *see also Goodman v. McMillan*, 61 So. 2d 55, 59 (Ala. 1952). We see nothing in the text of section 103(c) that would permit the VA to disregard Alabama's rigorous standard of proof for establishing a valid common law marriage. To the contrary, the failure to apply the clear and convincing proof requirement would eviscerate an essential element of state law. *See Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 283 (1990) (explaining that a state may adopt a clear and convincing standard of proof to "reflect the importance of a particular adjudication" and to "serve[] as a societal judgment about how the risk of error should be distributed between the litigants" (citations and internal quotation marks omitted)).

---

[2]     As will be discussed more fully in section II E, Congress also granted the Secretary authority to determine the evidence necessary to establish a "deemed valid" marriage under 38 U.S.C. § 103(a).

The plain language of section 103(c), which requires the VA to look to state law to determine the validity of a marriage, reflects the fact that matters related to marriage and domestic relations have long been considered to be the domain of the states. "[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (citations and internal quotation marks omitted); *see also Sosna v. Iowa*, 419 U.S. 393, 404 (1975) (explaining that the regulation of domestic relations is "an area that has long been regarded as a virtually exclusive province of the States"). Indeed, marital status, as defined by state law, frequently plays a prominent role in determining eligibility for benefits from the federal government.[3]

---

[3]    For example, a claimant seeking survivor benefits under the Social Security Act, 42 U.S.C. § 402, must establish that his or her marriage was valid under the law of the state where the wage earner resided. *See Young v. Sec'y of Health & Human Servs.*, 787 F.2d 1064, 1067 (6th Cir. 1986) ("The Social Security Act applies the laws of the state wherein the wage earner was domiciled at death, as interpreted by the courts of that state, to determine whether the claimant and the deceased wage earner had been validly married for purposes of the statute."). Similarly, under the Federal Coal Mine and Safety Act, 30 U.S.C. §§ 801, 811, a claimant will be considered the "spouse" of a miner if "[t]he courts of the State in which the miner is domiciled would find that such individual and the miner validly married," 20 C.F.R. § 725.204(a). Under the Family Medical and Leave Act, 29 U.S.C. §§ 2601-54, a "spouse" is defined as "a husband or wife as defined or recognized under State law for purposes of marriage in the State where the employee

Significantly, in determining whether a claimant seeking federal benefits has entered into a valid marriage under the laws of a particular state, courts apply not only the substantive elements of state law, but also state law evidentiary burdens. In *Dickey v. Office of Personnel Management*, for example, this court determined that the District of Columbia's preponderance of the evidence standard must be applied in determining the validity of a common law marriage for purposes of obtaining survivor annuity benefits from the federal employee retirement program. 419 F.3d 1336, 1340 (Fed. Cir. 2005). Likewise, a claimant seeking Social Security survivor benefits must satisfy the evidentiary burdens required by state law in order to establish a valid common law marriage. *See Gainey v. Barnhart*, 299 F.3d 1004, 1006 n.3 (8th Cir. 2002) (explaining that under Michigan law a common law marriage must be established by clear and convincing evidence); *Chlieb v. Heckler*, 777 F.2d 842, 845 (2d Cir. 1985) (stating that under Ohio law a common law marriage must be established by clear and convincing evidence); *Weiner v. Astrue*, No. 09-7088, 2010 U.S. Dist. LEXIS 18120, at *13 (S.D.N.Y. Feb. 25, 2010) (explaining that under the law of the District of Columbia a common law marriage must be established by a preponderance of the evidence). We are constrained to follow a similar approach here.[4] We see nothing in section 103(c) that

_____

resides, including common law marriage in States where it is recognized," 29 C.F.R. § 825.122(b).

[4] Our conclusion that state law evidentiary standards apply to questions related to the validity of a marriage is bolstered by cases construing the Federal Tort Claims Act ("FTCA"), which contains language that is substantively identical to the phrase "according to the law of the place" contained in section 103(c). The FTCA provides:

would permit the VA to disregard state law evidentiary requirements when determining whether a claimant entered into a valid common law marriage.

> [T]he district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place* where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added).

In determining whether a violation of the FTCA has occurred, courts have applied not only the substantive elements of state law, but also state law evidentiary burdens. *See Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006) (applying Louisiana's preponderance of the evidence standard to a FTCA claim); *Littlejohn v. United States*, 321 F.3d 915, 924 (9th Cir. 2003) (explaining that Nevada's preponderance of the evidence standard applies to a medical malpractice claim brought under the FTCA); *Mitchell v. United States*, 141 F.3d 8, 13 (1st Cir. 1998) (applying Massachusetts' preponderance of the evidence standard to a FTCA claim); *Ward v. United States*, 838 F.2d 182, 185 (6th Cir. 1988) (applying Tennessee's preponderance of the evidence standard to a FTCA claim).

### D. RESOLVING INTERPRETATIVE DOUBT

"Congress has expressed special solicitude for the veterans' cause," and has created a uniquely pro-claimant system for adjudicating claims for VA benefits. *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009); *see Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1204 (2011). Accordingly, in construing veterans' benefits legislation "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994); *see also Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (explaining that veterans' "legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need"). Here, however, this pro-veteran canon of construction would not necessarily advance the interpretation of section 103(c) advocated by Mrs. Burden and Mrs. Coleman. "The applicable statutes that provide benefits to children of a deceased veteran are different depending on whether the veteran leaves a surviving spouse." *Hanlin v. Nicholson*, 474 F.3d 1355, 1356-57 (Fed. Cir. 2007); *see* 38 U.S.C. §§ 1311, 1313. If a veteran dies and leaves minor children but no surviving spouse, the VA will provide DIC benefits directly to the veteran's children. *See* 38 U.S.C. § 1313. Thus, when the VA recognizes a common law marriage as valid for purposes of awarding DIC compensation to a common law spouse, the effect may be to reduce the amount of benefits that are paid directly to the veteran's children. *See Hanlin*, 474 F.3d at 1357. Although we are required to resolve interpretive doubt in the veteran's favor, *Brown*, 513 U.S. at 118, we have no obligation to construe section 103(c) in a manner that would favor the interests of a veteran's purported common law spouse over those of his children.

We reject, moreover, the contention that the "benefit of the doubt" rule contained in section 5107(b) precludes the VA from applying state law evidentiary standards to

questions related to the validity of a marriage.[5]  Section 5107(b) requires that the VA give the veteran the benefit of the doubt when the evidence regarding any issue material to his claim is in relative equipoise.  *See Skoczen v. Shinseki*, 564 F.3d 1319, 1324 (Fed. Cir. 2009).  We have previously held, however, that the benefit of the doubt rule is inapplicable where a statute or regulation specifically dictates a different evidentiary standard.  *Yates v. West*, 213 F.3d 1372, 1375 (Fed. Cir. 2000) (concluding that section 5107(b)'s benefit of the doubt rule does not apply when claimants are required to demonstrate "clear and unmistakable error" in a final VA decision); *see also Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (concluding that the Veterans Court, notwithstanding section 5107(b)'s benefit of the doubt rule, must review the board's determinations regarding whether a disability is service-connected under a clearly erroneous standard).  Here, because Congress has specifically directed that state law governs questions related to the validity of a marriage—and Alabama requires clear and convincing proof to establish a valid common law marriage—that is the standard of proof that must be applied under section 103(c).  *See Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear inten-

---

[5]   Section 5107(b) provides:

The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary.  When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

38 U.S.C. § 5107(b).

tion otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."); *First Nationwide Bank v. United States*, 431 F.3d 1342, 1348 (Fed. Cir. 2005) ("As a principle of statutory interpretation, a specific provision prevails against broader or more general provisions, absent clear contrary intent.").

This does not mean, however, that section 5107(b) has no applicability in determining whether a purported common law spouse is entitled to receive DIC compensation. As the Veterans Court correctly recognized, section 103(c), by its own terms, provides only that the "validity" of a marriage must be established under state law. Once the validity of a marriage has been established, "the 'benefit of the doubt' doctrine is applicable to the rest of the entitlement determination, which includes making determinations about the length of the marriage, when the marriage began, and whether a child was born to the marriage." *Burden Decision*, 25 Vet. App. at 186.

### E.  THE INTERPLAY BETWEEN SECTION 103(A) AND SECTION 103(C)

We must construe the words of a statute "in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) (emphasizing that "[s]tatutory construction . . . is a holistic endeavor" and "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme"). A comparison of the language of section 103(a) with that of section 103(c) reinforces the conclusion that section 103(c) requires the application of state law evidentiary standards. Section 103(a) provides that a marriage can be "deemed" valid when a claimant was unaware that there was a legal impediment to an otherwise valid marriage. For example, if a claimant married a first cousin

and was unaware that state law prohibited such a marriage, that marriage could nonetheless be deemed valid pursuant to section 103(a).[6]  *See Lamour v. Peake*, 544 F.3d 1317, 1322-23 (Fed. Cir. 2008).  Section 103(a) thus provides a limited exception to section 103(c)'s requirement that the validity of a marriage must be established under state law, and can be invoked only in situations in which a claimant was unaware that there was a legal impediment to his or her marriage.  *See Lamour*, 544 F.3d at 1323; *see also Colon v. Brown*, 9 Vet. App. 104, 107-08 (1996).

Significantly, section 103(a) specifically says that a marriage will be deemed valid only if "it is established by evidence satisfactory to the Secretary" that a putative

---

[6]    Section 103(a) in relevant part provides:

Whenever, in the consideration of any claim filed by a person as the widow or widower of a veteran for gratuitous death benefits under laws administered by the Secretary, it is established *by evidence satisfactory to the Secretary* that such person, without knowledge of any legal impediment, entered into a marriage with such veteran which, but for a legal impediment, would have been valid, and thereafter cohabited with the veteran for one year or more immediately before the veteran's death, or for any period of time if a child was born of the purported marriage or was born to them before such marriage, the purported marriage shall be deemed to be a valid marriage, but only if no claim has been filed by a legal widow or widower of such veteran who is found to be entitled to such benefits.

38 U.S.C. § 103(a) (emphasis added).

spouse was unaware of a legal impediment to an otherwise valid marriage. Thus, section 103(a) expressly delegates to the VA the authority to determine the evidence necessary to establish a "deemed valid" marriage. Section 103(c), by contrast, provides the VA with no such authority. Instead, as discussed previously, section 103(c) requires that the validity of a marriage must be "proven" according to state law. When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citations and internal quotation marks omitted). The fact that section 103(a) grants the VA authority to set evidentiary standards—while section 103(c) does not—buttresses the conclusion that state law evidentiary standards must be applied in assessing the validity of a marriage under section 103(c).[7]

---

[7]    Mrs. Burden argues that 38 C.F.R. § 3.205 supports her contention that federal law should govern evidentiary questions related to the validity of a marriage. We disagree. Section 3.205(a) specifies that certain types of evidence, such as a public marriage record or an affidavit of the clergyman who officiated at a wedding ceremony, may be submitted to establish a marriage for VA benefits purposes. Section 3.205(b) provides, however, that the evidence listed in section 3.205(a) will suffice to establish a valid marriage only "[i]n the absence of conflicting information." Where, as here, the VA is confronted with conflicting information regarding whether the parties entered into a valid common law marriage, the types of evidence described in section 3.205(a) will not necessarily suffice to establish the validity of that marriage.

Had Congress intended to provide the VA with authority to set the evidentiary standards for establishing a valid marriage under section 103(c), it could have done so explicitly. *See Boyer v. West*, 210 F.3d 1351, 1356 (Fed. Cir. 2000) ("If Congress had similarly intended to permit consideration of partial non-service-connected loss of function with respect to hearing, it surely would have done so with an explicit provision akin to [those contained in] other subsections" of the statute.)

### F. THE VA'S DUTY TO ASSIST CLAIMANTS

Pursuant to section 5103(a), the VA is obligated to notify claimants of the information needed to substantiate their claims.[8] Mrs. Burden contends that the VA failed to fulfill this duty because it did not notify her of the evidence required to establish a deemed valid marriage under section 103(a). Given that Alabama recognizes common law marriage, however, it is difficult to see how there was any "legal impediment" to Mrs. Burden's mar-

---

[8] In relevant part, section 5103(a) provides:

The Secretary shall provide to the claimant and the claimant's representative, if any, by the most effective means available, including electronic communication or notification in writing, notice of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a).

riage. *See Lamour*, 544 F.3d at 1322-23 (explaining that a state's failure to recognize common law marriage can qualify as a legal impediment to marriage for purposes of section 103(a)). Mrs. Burden, moreover, failed to raise the argument that there was any type of legal impediment to her marriage when she was before the Veterans Court. Nor did she assert that the VA failed in its duty to notify and assist her in developing a claim based upon a deemed valid marriage under section 103(a). Because Mrs. Burden did not properly raise the issue of whether the VA failed to assist her in substantiating a claim under section 103(a), we decline to consider that issue for the first time on appeal. *See Hormel v. Helvering*, 312 U.S. 552, 556 (1941) ("Ordinarily an appellate court does not give consideration to issues not raised below."); *Minesen Co. v. McHugh*, 671 F.3d 1332, 1342 (Fed. Cir. 2012) ("It is well-established that federal appellate courts do not consider arguments not timely raised by the parties.").

## III. CONCLUSION

For the foregoing reasons, the judgments of the United States Court of Appeals for Veterans Claims are affirmed.

## COSTS

No costs.

## **AFFIRMED**