# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-3924

CORAZON R. PATRICIO, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided August 31, 2017)

*Eric A. Gang* and *Ryan J. Casson*, both of Hackettstown, New Jersey, were on the brief for the appellant.

*Leigh A. Bradley,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Megan C. Kral,* all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and BARTLEY and GREENBERG, *Judges*.

BARTLEY, *Judge*: Corazon R. Patricio appeals through counsel a September 2, 2015, Board of Veterans' Appeals (Board) decision denying her recognition as the surviving spouse of deceased veteran Antonio A. Patricio for the purposes of receiving VA death benefits. Third Amended Record of Proceedings (R.) at 2-9. This appeal is timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). While the veteran was alive, VA issued a 1986 decision denying certain benefits based on its determination that his marriage to Ms. Patricio was not valid under the law of the Philippines. Notwithstanding that 1986 decision, Ms. Patricio argues that she is entitled to recognition under both American and Philippine law. This case was referred to a panel to address these issues. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the reasons set forth below, the Court holds that Ms. Patricio is not precluded in the present appeal from relitigating the validity of her marriage to the veteran and that this Court has jurisdiction to consider such arguments. On the merits, we conclude that outstanding factual questions do not permit reversal; instead we will set aside the September 2015 Board decision and remand the matter for additional development, if necessary, and readjudication consistent with this decision.

## I. FACTS

The veteran served on active duty in the U.S. Navy from October 1959 to April 1986. R. at 48, 51-52, 55-56. The Philippines is listed in his DD 214 forms as his place of birth; those forms also specify mailing addresses in that country as his permanent mailing address following separation from service. *See id.*

In May 1968, the veteran married Susan Balajadia (Susan) in the Philippines. R. at 997-98. An August 1970 Filipino certificate of live birth for the veteran's daughter lists the veteran's nationality as American. R. at 1499.

In May 1973, the Superior Court of California, San Diego County, entered a final judgment of dissolution of marriage between the veteran and Susan. R. at 1500; *see also* R. at 1538 (February 1973 interlocutory judgment). In June 1977, a second child was born to the veteran and Susan in Manila; the certificate of live birth lists the veteran's nationality as Filipino. R. at 1413.

In October 1980, the veteran married the appellant, Corazon C. Ramos, in Seoul, South Korea. R. at 1540-41. A February 1982 U.S. State Department "Report of Birth Abroad of a Citizen of the United States of America" shows the birth of the veteran's and the appellant's son in Seoul. R. at 1378. This document also indicates that the veteran was naturalized as a U.S. citizen in October 1973.[1] *Id.*

As noted above, the DD 214 form pertaining to the veteran's final period of service ending in April 1986 indicated a permanent mailing address in Manila. R. at 52. Also of record is a document showing that the veteran and Ms. Patricio celebrated a religious marriage ceremony in Manila in July 1986. R. at 562. Meanwhile, in June 1986, the veteran filed a Declaration of Status of Dependents, listing children from his marriage with Susan and two of Ms. Patricio's children from a previous marriage and seeking additional benefits for them. R. at 1493-94.

In August 1986, the VA regional office (RO) sought a legal opinion from VA's district counsel as to whether the May 1973 California divorce legally terminated the veteran's marriage to Susan and, hence, whether Ms. Patricio could be recognized as his wife for VA benefits purposes. R. at 1410. In a September 1986 memorandum, the district counsel advised that the veteran's second marriage was not valid for VA benefits purposes. R. at 1382-83. The opinion

---

[1] Naturalization papers are not in the record before the Court, but the State Department document states: "Father's certificate of naturalization seen and returned." R. at 1378.

stated that, although California law permitted active duty U.S. Navy sailors (including Filipinos) to obtain divorces despite usual residency requirements, the veteran's domicile during and following service remained in the Philippines; therefore, the law of the Philippines governed. R. at 1382. Because "Philippine law rejects foreign divorces by its citizens," the memorandum concluded that "VA cannot legally recognize the 1973 [California] divorce of [the] Filipino spouse by the Filipino veteran" or the veteran's subsequent marriage to Ms. Patricio. *Id.* In October 1986, the RO disallowed the claim for additional benefits on the basis that the veteran's second marriage could not be legally recognized. R. at 1374. The veteran timely disagreed with this determination, asserting that he was a U.S. citizen at the time of his divorce from Susan. R. at 1373. The RO continued its decision. R. at 1360-63. There is no evidence that the veteran perfected an appeal to the Board.

The record also contains a September 25, 1989, certificate for live birth in the Philippines listing the veteran as the father and Cynthia Gatchalian Raagas as the mother; the nationality of both is listed as American. R. at 564-65. The birth certificate indicates that the veteran and Cynthia were married on June 24, 1976, in Los Angeles, California. *Id.*

The veteran and Ms. Patricio moved to Florida in or about 1989. R. at 6. The veteran died in Texas on July 16, 2009. R. at 1000. Prior to his death, he had been granted service connection for various disabilities and was paid as a single veteran without dependents. R. at 1044-46, 1048-50, 1112-20. In August 2009, Susan filed a claim for dependency and indemnity compensation (DIC). R. at 988-96. In September 2009, the veteran's sister sought a service-connected burial allowance. R. at 900-07. In October 2009, Ms. Patricio filed a claim for DIC. R. at 849-56, 874, 888-94.

In September 2010, the RO granted service connection for the cause of the veteran's death and paid burial benefits to the veteran's sister. R. at 1522-26. In December 2011, the RO granted Susan DIC and denied Ms. Patricio DIC, finding that the former and not the latter could be recognized as the veteran's surviving spouse. R. at 596-97, 604-18. Ms. Patricio disagreed with this decision, R. at 593, the RO continued its denial, R. at 566-90; *see also* R. at 504-07 (April 2014 Supplemental Statement of the Case), and Ms. Patricio appealed to the Board, R. at 497-98, 548-49. Ms. Patricio testified at a May 2015 Board hearing. R. at 14-32.

In the September 2015 decision on appeal, the Board denied Ms. Patricio recognition as the veteran's surviving spouse for VA death benefits. Initially, the Board observed that, although

3

VA failed to notify Susan of the May 2015 Board hearing or afford her an opportunity to testify, as is required in the case of simultaneously contested claims, this error was harmless as to Susan because the Board determined that Susan, not Ms. Patricio, was the veteran's surviving spouse. R. at 5. Although acknowledging that "the [v]eteran was a naturalized citizen at the time of the 1980 marriage" to Ms. Patricio, the Board found that he was primarily a resident of the Philippines through the date of his death and, therefore, that Philippine law must govern the validity of his marriage to the appellant. R. at 7. Because Philippine law would not recognize the veteran's May 1973 California divorce from Susan, the Board concluded that his subsequent marriage to Ms. Patricio was "illegal and void from its performance" for VA benefits purposes. R. at 8-9. Finally, the Board determined that, despite the invalidity, VA could not deem valid the veteran's attempted marriage to Ms. Patricio because a claim for recognition as the veteran's surviving spouse had already been filed by Susan and granted. R. at 9 (citing 38 C.F.R. § 3.52(d)). This appeal followed.

## II. PARTIES' ARGUMENTS AND JUDICIAL PROCEEDINGS

Ms. Patricio initially contended that the September 1986 memorandum reached its conclusions by assuming that the veteran was a citizen of the Philippines when he divorced Susan. She observed that the Board, in the decision on appeal, did not make an explicit finding as to the veteran's citizenship at the time of the May 1973 California divorce from Susan, and she refused to concede that the veteran was a citizen of the Philippines. Appellant's Brief (Br.) at 9-13. Ms. Patricio asserted that under *Philippine law* the veteran's divorce from Susan would have been valid if he were a foreign national, e.g., an American citizen, at the time of the divorce. *Id.* at 13-21. However, notwithstanding the Board's failure to address this factual question or favorable points of Philippine law, Ms. Patricio argued that she is entitled to a reversal of the Board's denial of recognition as the veteran's surviving spouse because, under the Full Faith and Credit Clause of the U.S. Constitution and its implementing federal statute, both VA and this Court must recognize the validity of the California court's 1973 judgment of divorce between the veteran and Susan and, therefore, the validity of the veteran's subsequent marriage to her. *Id.* at 21-30.

The Secretary responded that Ms. Patricio's arguments are merely an attempt to reverse the October 1986 RO decision finding the veteran's marriage to Ms. Patricio invalid and that, because she had not properly filed a motion to reverse or revise that decision on the basis of clear and unmistakable error (CUE), the Court must dismiss the present appeal for lack of jurisdiction.

4

Secretary's Br. at 7-9. If, however, the Court were to find that it had jurisdiction over this appeal, the Secretary contended that the case should be remanded for the Board to determine the veteran's citizenship during the period relevant to this claim, specifically, at the time of the May 1973 divorce. *Id.* at 9-13. The Secretary did not address Ms. Patricio's Full Faith and Credit arguments.

In reply, Ms. Patricio disputed the Secretary's jurisdictional argument and continued to argue that it was not necessary to resolve the veteran's citizenship to determine the validity of the 1973 divorce or subsequent marriage. Reply Br. at 1-14.

Given the novel questions raised by Ms. Patricio's reversal arguments, the case was submitted to a panel of the Court for resolution, and the panel ordered supplemental briefing on the Full Faith and Credit issues and scheduled the case for oral argument. Prior to the argument date, however, the Secretary filed a motion for leave to file a third amended record of proceedings and disclosed that, during his review of the record before the agency, he for the first time noticed the September 25, 1989, Philippines birth certificate indicating that the veteran had married Cynthia Raagas in Los Angeles in 1976, subsequent to his 1968 marriage to Susan but predating his 1980 marriage to Ms. Patricio. In light of the revelation in the Secretary's motion, the Court cancelled oral argument and ordered the parties to conference with the Court's Central Legal Staff to discuss whether a mutually agreeable basis for remand could be reached. Following notification from the parties that they could not reach agreement on disposition of the appeal, the Secretary's motion for leave to file a third amended record of proceedings was granted.

### III. ANALYSIS

#### A. The Court Has Jurisdiction Over the Appeal

The first matter for resolution is the Secretary's argument that the Court lacks jurisdiction to consider the appeal. This Court has jurisdiction to hear timely appeals from VA claimants adversely affected by final Board decisions. 38 U.S.C. §§ 7252(a), 7266(a); *see Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order) ("This Court's jurisdiction is confined to the review of final [Board] decisions which are adverse to a claimant."). Accordingly, the Court's "jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed." *Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998). In the present appeal, both Susan and Ms. Patricio filed claims for DIC around the same time, and the RO determined that Susan, not Ms. Patricio, could be recognized as the veteran's surviving spouse for VA benefits purposes.

5

R. at 596-97, 604-18. Ms. Patricio disagreed with this decision and ultimately appealed to the Board, which adjudicated the issue on the merits. R. at 2-9, 497-98, 548-49. By all appearances, the Court has jurisdiction to hear this appeal.

The Secretary contends that the Court must dismiss the appeal because Ms. Patricio "essentially asks the Court to overcome the finality of the October 1986 [RO] decision" that "determined she was not the legal spouse of the [v]eteran" but has not followed the proper procedures to obtain that result, namely, the filing of a CUE motion to reverse or revise that 1986 decision. Secretary's Br. at 8. The Court disagrees.

A claimant may seek the reversal or revision of a prior VA decision by alleging CUE in that decision. 38 U.S.C. § 5109A; 38 C.F.R. §§ 3.105, 20.1400-11 (2017). A CUE motion must be presented first to the RO or the Board, depending on the nature of the decision being attacked, and this Court lacks jurisdiction to address a CUE motion in the first instance. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 334 (2006) (en banc). A "claim which is reversed or amended due to [CUE] is not being reopened. It is being revised to conform to the 'true' state of the facts or the law that existed at the time of the original adjudication." *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc). But Ms. Patricio is not seeking to reverse or revise the October 1986 RO decision that denied the veteran additional compensation based on dependents. She is appealing the denial of a distinct claim for DIC benefits that she filed in October 2009. To the extent that her new claim for benefits relies on "[n]ew or recently developed facts or changes in the law subsequent to the original adjudication," *Russell*, 3 Vet.App. at 313, she is not required to pursue those benefits through a CUE motion.

More importantly, Ms. Patricio is not *permitted* to file a CUE motion as to the October 1986 RO decision. Section 5109A(c) specifies that a CUE challenge may be initiated only "on the Secretary's own motion or upon request of *the claimant*." Because Ms. Patricio was not "the claimant" involved in the October 1986 RO determination, she is not permitted under section 5109A to file a CUE motion in circumstances such as these. *See Rusick v. Gibson*, 760 F.3d 1342, 1345-46 (Fed. Cir. 2014) (stating "that 'a survivor has no standing to request review of a decision affecting the disability benefits of a veteran on the ground of CUE'" (quoting *Haines v. West*, 154 F.3d 1298, 1301 (Fed. Cir. 1998))); *see also id.* at 1346 (clarifying that, notwithstanding the enactment of 38 U.S.C. § 5121A, which allows specified survivors to be substituted for the deceased VA claimant for accrued benefits purposes, "*Haines* still stands for the proposition that

a survivor cannot initiate a freestanding CUE claim under section 5109A if the veteran had not already filed such a claim"); *cf.* 38 C.F.R. § 20.1400(a) (2017) ("Review to determine whether [CUE] exists in a final Board decision may be initiated by the Board, on its own motion, or by *a party to that decision*." (emphasis added)).

Furthermore, VA has provided by regulation that, except in situations not relevant here, "issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime." 38 C.F.R. § 20.1106 (2017); *see Sheets v. Nicholson*, 20 Vet.App. 463, 466 (2006) ("VA treats a claim for DIC as an entirely new and original claim and adjudicates it without regard to any prior disposition of issues during a veteran's lifetime."); *see also Hupp v. Nicholson*, 21 Vet.App. 342, 352 (2007) ("[A] DIC claim is an original claim for benefits that is independent of any underlying service-connection claim lodged by a veteran or pending at the time of the veteran's death. Consequently, VA adjudicates a DIC claim without regard to any prior negative disposition of issues during a veteran's lifetime and decides that claim disregarding any prior determination on the credibility or probative value of any evidence submitted in connection with a veteran's previously denied or pending service-connection claim." (citations omitted)), *rev'd on other grounds sub nom. Hupp v. Shinseki*, 329 F. App'x 277 (Fed. Cir. 2009) (table). Although prior cases addressing § 20.1106 have dealt mainly with determinations related to service-connection matters, the regulation's broad reference to "issues involved in a survivor's claim for death benefits" clearly encompasses issues pertaining to marital status. This means that for purposes of her pursuit of survivor benefits, including surviving spouse status, the prior unfavorable October 1986 RO decision determining that the veteran's 1980 marriage to Ms. Patricio could not be legally recognized is of no moment. The October 1986 RO decision does not preclude Ms. Patricio from relitigating, for VA benefits purposes, the issues of the validity of the 1973 divorce or the validity of her subsequent marriage to the veteran.

Thus, the Secretary's position is contrary to law, and the Court holds that it has jurisdiction to consider the present appeal and that Ms. Patricio is not precluded by the October 1986 RO decision from arguing that her marriage to the veteran was valid.

### B. Remand Is the Appropriate Disposition

Having rejected the Secretary's argument that it lacks jurisdiction over the case, the Court agrees with the Secretary that the matter must be remanded for readjudication by the Board, following additional development if necessary. Secretary's Br. at 9-13.

Pursuant to 38 U.S.C. § 1310, DIC is payable to the surviving spouse of a qualifying veteran who died from a service-connected disability. "For purposes of obtaining DIC benefits, the validity of a marriage is determined 'according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued.'" *Burden v. Shinseki*, 727 F.3d 1161, 1166 (Fed. Cir. 2013) (quoting 38 U.S.C. § 103(c)); *see* 38 C.F.R. § 3.1(j) (2017). Thus, in *Badua v. Brown*, 5 Vet.App. 472 (1993), the Court affirmed a Board decision denying a claimant recognition as the surviving spouse of a Filipino veteran because the veteran's previous marriage was not validly terminated under the law of the Philippines, where the marriage of the claimant to the veteran took place.

Here, the Board found that the veteran's marriage to Ms. Patricio—which initially took place in Seoul in 1980 and was later solemnized in a religious ceremony in Manila in 1986—could not be recognized as valid because the veteran's previous marriage to Susan had not been terminated by death, annulment, or dissolution, as required by Article 83 of the Civil Code of the Philippines. R. at 8. In other words, the Board concluded that the May 1973 California judgment of divorce did not validly end the veteran's marriage to Susan. Undergirding this analysis was the presumption that, at the time of the May 1973 divorce, the veteran was a citizen of the Philippines.

Both parties agree that the Board failed to make a factual finding as to the veteran's citizenship at the time of the May 1973 divorce. *See* Appellant's Br. at 11 ("Ms. Patricio simply contends that the Board failed to render in the first instance a factual finding as to [the veteran's] citizenship at the time of the California court's divorce decree."); Secretary's Br. at 12 ("It is not in dispute that the [v]eteran became a naturalized American citizen; however, the question of *when* remains."). Ms. Patricio agrees that, to the extent Philippine law is applicable at all, Article 83 applies in this case. Appellant's Br. at 15. However, she contends that, according to decisions of the Supreme Court of the Philippines, Article 83's prohibition on divorce applies only when both spouses at the time are Filipino citizens. *See generally* Appellant's Br. at 13-21.

Because the need to remand this case for additional factfinding depends on the propriety of Ms. Patricio's reading of Philippine law, the Court briefly reviews the authorities cited by the appellant. *See Lamour v. Peake*, 544 F.3d 1317, 1321 (Fed. Cir. 2008) ("Foreign law and its interpretation are questions of law, which [are] review[ed] de novo."). As noted by the Board, Article 83 of the Philippine Civil Code specifies:

> Any marriage subsequently contracted by any person during the lifetime of the first spouse of such person with any person other than such first spouse shall be illegal and void from its performance, unless:
>
>> (1) The first marriage was annulled or dissolved; or
>> (2) The first spouse had been absent for seven consecutive years at the time of the second marriage without the spouse present having news of the absentee being alive, or if the absentee, though he has been absent for less than seven years, is generally considered as dead and believed to be so by the spouse present at the time of contracting such subsequent marriage, or if the absentee is presumed dead according to Articles 390 and 391. The marriage so contracted shall be valid in any of the three cases until declared null and void by a competent court.

CIVIL CODE, Art. 83 (Phil.); *see also id.*, Art. 15 ("Laws relating to family rights and duties, or to the status, condition and legal capacity of persons are binding upon citizens of the Philippines, even though living abroad.").

As the Supreme Court of the Philippines[2] has stated, judicial annulment or declaration of nullity is generally the only means of terminating a marriage in the Philippines; divorce is not recognized. *See Corpuz v. Tomas and the Solicitor General*, G.R. No. 186571 (S.C. Aug. 11, 2010) (Phil.), *available at* http://sc.judiciary.gov.ph/jurisprudence/2010/august2010/186571.htm ("Our family laws do not recognize absolute divorce between Filipino citizens."). However, that court has also held that "only Philippine nationals are covered by the policy against absolute divorces, the same being considered contrary to our concept of public policy and morality." *Llorente v. Court of Appeals*, G.R. No. 124371 (S.C. Nov. 23, 2000) (Phil.), *available at* http://sc.judiciary.gov.ph/jurisprudence/2000/nov2000/124371.htm. When a foreign national married to a Philippine citizen obtains a valid foreign judgment of divorce, the law of the Philippines recognizes that judgment. *See id.* (noting that "*aliens* may obtain divorces abroad, provided they are valid according to their national law"). The validity of a foreign judgment of divorce is also recognized by the law of the Philippines even when, although both spouses were citizens of the Philippines at the time of the marriage, the spouse initiating the divorce "was no longer a Filipino citizen when [he or she] obtained the divorce" abroad. *Id.*; *see also Quita v. Court of Appeals*, G.R. No. 124862 (S.C. Dec. 22, 1998) (Phil.), *available at*

---

[2] Decisions of the Supreme Court of the Philippines are available in English on that Court's website, http://sc.judiciary.gov.ph/.

http://sc.judiciary.gov.ph/jurisprudence/1998/dec1998/124862.htm (stating that the validity of a California divorce judgment between spouses married in the Philippines depended on whether the spouse obtaining the divorce had become a naturalized American citizen *before* the judgment of divorce).[3]  Finally, the Supreme Court of the Philippines has held that, even though these rules were not officially codified in the Family Code until 1988, that court's case law provided "sufficient basis [for] resolving a situation where a divorce is validly obtained abroad by the alien spouse" prior to 1988.  *San Luis v. San Luis*, G.R. No. 133743 (S.C. Feb. 6, 2007) (Phil.), *available at* http://sc.judiciary.gov.ph/jurisprudence/2007/feb2007/133743_134029.htm; *see also id.* ("With the enactment of the Family Code . . . , Article 26 thereof, our lawmakers codified the law already established through judicial precedent.").  Thus, even if the law of the Philippines governed the validity of the veteran's divorce from Susan based on the Board's finding that the veteran was "primarily a resident of the Philippines through the date of his death," R. at 7, such law would permit recognition of the divorce if the veteran were an American citizen at the relevant time.

However, the Board decision on appeal did not make a specific finding as to the veteran's nationality when he obtained the May 1973 California judgment of divorce from Susan.  The record evidence is not entirely clear on this question, *compare* R. at 1378 (specifying that the veteran became a naturalized American citizen in October 1973), *with* R. at 1499 (indicating in August 1970 that the veteran's nationality was American), and, in any event, the Court is unable to make such a determination in the first instance, *see Kyhn v. Shinseki*, 716 F.3d 572, 575 (Fed. Cir. 2013).  Thus, remand is necessary for the Board to address this matter, as well as the matters discussed below.  *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

Despite the Secretary's concession that remand is necessary, Ms. Patricio continues to insist that reversal is the only proper disposition.  *See* Reply Br. at 1-4.  This argument is unpersuasive.

---

[3] As later clarified by the Supreme Court of the Philippines when addressing Article 26 of the Family Code, "[t]he reckoning point is not the citizenship of the parties at the time of the celebration of the marriage, but their citizenship *at the time a valid divorce is obtained abroad* by the alien spouse capacitating the latter to remarry." *Rep. of the Philippines v. Orbecido*, G.R. No. 154380 (S.C. Oct. 5, 2005) (Phil.), *available at* http://sc.judiciary.gov.ph/jurisprudence/2005/oct2005/154380.htm.

The Board noted *Orbecido* but stated that the May 1973 judgment of divorce could still not be recognized unless *Susan* filed a copy of the divorce decree with the courts of the Philippines and demonstrated that it permitted her to remarry.  R. at 8.  The Court expresses no opinion on the propriety of this determination.

Even if the Court were to address her Full Faith and Credit argument and conclude that the May 1973 California judgment of divorce between the veteran and Susan must be recognized as valid under federal constitutional and statutory bases, that would not necessarily result in an award of DIC to Ms. Patricio. As the Secretary has noted, evidence of record raises the possibility that the veteran was married to a third woman, Cynthia Raagas, in June 1976 in Los Angeles. R. at 564-65. If this is so, regardless of whether the veteran's marriage to Susan was properly terminated, it is unclear whether the veteran's marriage to Cynthia was also properly terminated before he married Ms. Patricio. This Court may not reverse a Board decision and order the award of benefits when there are outstanding material factual matters requiring Board resolution. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013); *see also Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) (explaining that "reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision").

Ms. Patricio asserts that the question of an intervening third marriage is a litigating position introduced for the first time on appeal by the Secretary because "the Board never found any such fact." Opposition to the Secretary's Motion for Leave to File a Third Amended Record of Proceedings (Opposition) at 2. She is correct that the Board did not address this question; she errs, however, in arguing that remanding the case to the Board somehow establishes the existence or validity of such a marriage. *Id*. at 2-3. The Board is obliged to address all material issues and questions of fact, *see* 38 U.S.C. § 7104(d)(1); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table), and when such a factual question arises for the first time before the Court, the proper disposition is to remand the case for the Board to fulfill that obligation. Whether the veteran married Cynthia in 1976 is an open question, but it is a question material to the resolution of Ms. Patricio's claim. Alternatively, Ms. Patricio argues that, even if the veteran married Cynthia in 1976, it is not a bar to the present claim because Ms. Patricio's marriage to the veteran may nonetheless be "deemed valid." Opposition at 5 (citing 38 U.S.C. § 103(a) and 38 C.F.R. § 3.52). But for these provisions to apply to permit a marriage to "nevertheless be deemed valid" notwithstanding "invalid[ity] by reason of a legal impediment," it must be established, inter alia, that Ms. Patricio entered into the marriage without knowledge of the impediment, that she continuously cohabitated with the veteran from the date of their marriage until his death, and that no claim has been filed from a legal surviving spouse who has been found

11

entitled to death benefits. 38 C.F.R. § 3.52(c)-(d) (2017). Again, these are factual questions that must be resolved by the Board, to which the Court cannot simply presume the answers.

Thus, with these outstanding factual questions, the Court cannot reverse the Board decision on the basis of Ms. Patricio's Full Faith and Credit arguments. She may present them to the Board, which should consider them, if necessary, following resolution of the outstanding factual issues addressed in this decision.

The Court observes one final issue that the Board must adequately resolve on remand. The Board noted that Susan—who is currently in receipt of DIC and could lose that benefit if it is determined by the Board that her marriage to the veteran was terminated by the May 1973 California judgment of divorce—did not appear to have been properly notified of the May 2015 Board hearing or given the opportunity to testify at it, in violation of 38 C.F.R. § 20.713(a) ("hearings in simultaneously contested claims"). R. at 5. The Board found this lack of notice harmless to Susan because it was ruling against Ms. Patricio on the merits. *Id.* On remand, the Board must be cognizant of § 20.713(a)'s instruction to properly notify Susan and provide her an opportunity to be heard.

Ms. Patricio is free to present to the Board additional arguments and evidence in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, the September 2, 2015, Board decision is SET ASIDE and the matter is REMANDED for additional development, if necessary, and readjudication consistent with this decision.