# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-5969

VICTOR MANUEL AVILES-RIVERA, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 10, 2021                                             Decided May 2, 2022)

*Robert A. Jackson*, of Elk Grove, California, for the appellant.

*Omar Yousaf*, with whom *William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and TOTH and FALVEY, *Judges*.

BARTLEY, *Chief Judge*: Veteran Victor Manuel Aviles-Rivera appeals through counsel an August 20, 2019, Board of Veterans' Appeals (Board) decision that denied service connection for hypertension. Record (R.) at 3-20.[1] The appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of this Court, with oral argument,[2] to address whether the Board erred by not considering the 11th National Academy of Sciences (NAS) *Veterans and Agent Orange Update* (NAS Update), which was published after the veteran's election into VA's modernized review system and the regional office's (RO's) higher-level review decision but before the Board issued its decision. We hold that the evidentiary record restriction in 38 U.S.C. § 7113(a) barred the Board from considering the 11th NAS Update. Therefore, we conclude that the veteran's assertions of Board

---

[1] In the same decision, the Board denied service connection for chronic microvascular disease, dyslipidemia, an acquired psychiatric disorder, left and right shoulder disorders, left and right elbow disorders, a neck disability, a back disability, left side mastoiditis, maxillary and ethmoid sinus disease, bilateral hearing loss, and a skin disorder. Because Mr. Aviles-Rivera does not challenge these portions of the Board decision, *see* Appellant's Brief (Br.) at 1, the appeal as to those issues will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued and dismissing that portion of the appeal).

[2] *Aviles-Rivera v. McDonough*, No. 19-5969, Oral Argument [hereinafter "Oral Argument"]. Available at https://www.youtube.com/watch?v=ppPFq8aULp4.

error, which are all predicated on the Board considering the 11th NAS Update, must fail. Accordingly, the Board decision will be affirmed.

## I. BACKGROUND ON THE HYPERTENSION CLAIM

Mr. Aviles-Rivera served honorably in the U.S. Army from March 1968 to December 1969, including service in the Republic of Vietnam. R. at 1304.

In January 2013, the veteran filed a claim for service connection for hypertension. R. at 1155-60. In May 2014, a VA RO denied the claim. R. at 1081-85. In November 2014, the veteran filed a Notice of Disagreement (NOD), R. at 1057, and included a statement from Dr. Carlos E. Mora Quesada, R. at 1058-62. As relevant, Dr. Mora Quesada diagnosed hypertensive cardiovascular disease and opined that the veteran's condition was "more probable than not" related to his military service. *Id*. Following a December 2014 Statement of the Case (SOC), R. at 1013-34, the veteran timely perfected an appeal to the Board, R. at 1010.

In April 2017, the Board remanded the claim to obtain a medical opinion regarding the cause of the veteran's hypertension. R. at 902-10. At that time, the Board noted that, although Dr. Mora Quesada's opinion lacked rationale, it was enough to trigger VA's duty to provide an examination. R. at 907-08 (referring to Dr. Mora Quesada as "C.M., M.D." and citing *McLendon v. Nicholson*, 20 Vet.App. 79, 81 (2006)). In its remand directives, the Board instructed the VA examiner to "consider the NAS Updates[,] which concluded that there was 'limited or suggestive evidence of an association' between hypertension and herbicide exposure." R. at 909.

A VA examiner in October 2017 confirmed a diagnosis of hypertension, R. at 835, but opined that it was less likely than not related to military service because of the length of time between service and the 2006 initial diagnosis of hypertension. R. at 837-38. The examiner reviewed the 2014 NAS Update[3] and stated that, "[a]lthough the Update states that there is suggestive evidence to link hypertension to Agent Orange exposure, there is limited evidence that [Agent Orange] causes or aggravates [hypertension]. It also states that additional research is warranted." R. at 838. The RO issued a Supplemental SOC continuing the denial of service connection in May 2018. R. at 205-13.

---

[3] The 2014 NAS Update was published in 2016 and, at the time of the October 2017 VA examination, was the most recent report published by NAS. *See Veterans and Agent Orange: Update 2014* (2016).

In June 2018, Mr. Aviles-Rivera elected to participate in VA's Rapid Appeals Modernization Program (RAMP), selecting higher-level review for the service-connection claim. R. at 194. In doing so, he consented to higher-level review based on the evidence submitted to VA as of the date of his RAMP opt-in election. *Id*.

In September 2018, the RO issued a higher-level review decision under RAMP that denied the hypertension claim. R. at 56-81. In February 2019, Mr. Aviles-Rivera appealed the RO decision to the Board and opted for direct review based on the evidence of record at the time of the September 2018 prior RO decision. R. at 33-34.

In the August 2019 decision on appeal, the Board denied service connection for hypertension. The Board acknowledged the veteran's RAMP election and stated that the evidentiary record closed on June 18, 2018, the date of the election. R. at 6. In reaching its conclusion that service connection was not warranted, the Board acknowledged that Mr. Aviles-Rivera had a current hypertension disability and was exposed to herbicides during service in Vietnam, but found the preponderance of the evidence weighed against a link between the two. R. at 17-19. As to presumptive service connection, the Board stated that the Secretary had determined that there is no positive association between herbicide exposure and hypertension. R. at 16. As to direct service connection, the Board stated that, although the 2010 NAS Update found limited or suggestive evidence of an association between herbicide exposure and hypertension,[4] the October 2017 VA examiner's opinion[5] was more probative than either Dr. Quesada's opinion or the NAS finding because it was provided after both an examination of the veteran and a review of the record on appeal and is supported by citation to evidence found in the claims file and controlling medical literature. R. at 18-19. This appeal followed.

---

[4] Although the October 2017 VA examiner referred to the 2014 NAS Update, the Board referenced the 2010 NAS Update. Both reports concluded that there was limited or suggestive evidence of an association between herbicide exposure and hypertension.

[5] The Board refers to a November 2017 VA medical opinion, R. at 19, but this appears to be a typographic error as the examiner provided her opinion in October 2017, R. at 837-39.

## II. BACKGROUND ON NAS UPDATES AND THE AMA

Before discussing the specific arguments in this appeal, we provide an overview of the NAS Update process and VA's modernized review process, as they serve as the foundation for the parties' arguments.

### A. NAS Updates

In the Agent Orange Act of 1991 ("Agent Orange Act"), Congress directed VA to enter into an agreement with NAS, which was tasked to review and summarize scientific evidence concerning exposure to herbicides used by the military in Vietnam and diseases suspected to be associated with such exposure. Agent Orange Act of 1991, Pub. L. No. 102-4, 105 Stat. 11, § 3 (Feb. 6, 1991) (originally codified at 38 U.S.C. § 316 but later renumbered as 38 U.S.C. § 1116). NAS was to issue a report reflecting its findings and issue additional reports every few years in consideration of updated scientific evidence. *Id*.; *see* 38 U.S.C. § 1116 Note. Following receipt of each NAS report, the Secretary was to determine whether a presumption of service connection was warranted for these diseases and respond either through additional rulemaking if a presumption was warranted or by explaining why no presumption was warranted. Pub. L. No. 102-4, § 2; *see* 38 U.S.C. § 1116(b)-(c).

NAS issued its first report in 1994 and subsequent reports about every 2 years thereafter. *See Health and Medicine Division Reports on Agent Orange*, available at https://www.publichealth.va.gov/exposures/agentorange/publications/health-and-medicine-division.asp (last accessed April 20, 2022). In March 2016, NAS published its 10th Update and in November 2018, NAS published its 11th Update. *Veterans and Agent Orange: Update 11* (2018); *see* Vietnam Veterans and Agent Orange Exposure – New Report, available at https://www.nationalacademies.org/news/2018/11/vietnam-veterans-and-agent-orange-exposure-new-report (last accessed April 20, 2022). Each NAS report classifies various diseases based on the extent of available research into one of four hierarchal categories: sufficient evidence of an association, limited or suggestive evidence of an association, inadequate or insufficient evidence of an association, or no association. *See, e.g.*, *Veterans and Agent Orange: Update 11* at 6.

The sixth NAS Update was the first report to place hypertension in the "limited or suggestive evidence of an association" category. *Veterans and Agent Orange: Update 2006* (2007), at 11. That classification was reaffirmed by the 7th, 8th, 9th, and 10th NAS Updates. *See Veterans and Agent Orange: Update 2008* (2009), at 7; *Veterans and Agent Orange: Update 2010* (2012),

at 8; *Veterans and Agent Orange: Update 2012* (2013), at 8; *Veterans and Agent Orange: Update 2014* at 8. The 11th NAS Update elevated hypertension to the "sufficient evidence of an association" category. *Veterans and Agent Orange: Update 11* at 7.

B. VA's Modernized Review System

On August 23, 2017, Congress passed the Veterans Appeals Improvement and Modernization Act of 2017 ("AMA"), Pub. L. 115-55, 131 Stat. 1105, which "dramatically overhauled the VA appeals process." *Military-Veterans Advocacy v. Sec'y of Veterans Affairs*, 7 F.4th 1110, 1140 (Fed. Cir. 2021). Under this system, claimants within 1 year of an initial decision by the agency of original jurisdiction (AOJ) have three options (known as "lanes") for administrative review: file a supplemental claim based on new and relevant evidence; request higher-level review at the AOJ level based on the same evidentiary record; or file an NOD to appeal the decision to the Board. *Id.*; *see* 38 U.S.C. §§ 5104B, 5104C(a), 5108; *Andrews v. McDonough*, 34 Vet.App. 151, 157 (2021). When appealing to the Board, claimants have to choose one of three Board dockets: "direct review" docket; "additional evidence" docket; or "hearing" docket. 38 U.S.C. § 7105(b)(3); *see Andrews*, 34 Vet.App. at 157. In the additional evidence and hearing dockets, claimants are permitted to submit additional evidence to the Board. 38 U.S.C. § 7113(b)-(c); *see* 38 U.S.C. § 7105(b)(3)(a)-(b); 38 C.F.R. §§ 20.302 (2021), 20.303 (2021). In the direct review docket, the Board reviews the appeal without additional evidence, 38 U.S.C. § 7105(b)(3)(c); 38 C.F.R. § 20.301 (2021), because in this docket "the evidentiary record before the Board shall be limited to the evidence at the time of the decision of the [AOJ] on appeal." 38 U.S.C. § 7113(a); *see* 38 C.F.R. § 20.301.

The AMA applies to all claims for which notice of a decision is provided by the Secretary on or after February 19, 2019. *See* Pub. L. 115-55, 131 Stat. at 115, § 2(x). VA regulations implementing the AMA became effective February 19, 2019. *See* 38 C.F.R. § 19.2(a) (2021); *see also VA Claims and Appeals Modernization*, 83 Fed. Reg. 39,818 (Aug. 10, 2018) (proposed rule), 84 Fed. Reg. 138, 138 (Jan. 18, 2019) (final rule). Congress explicitly provided VA with the authority to operate programs to test the feasibility and advisability of the new appeal system prior to the AMA taking effect. Pub. L. 115-55, 131 Stat. at 1119-20, § 4(a)(1); *see Dolbin v. McDonough*, 34 Vet.App. 334, 336 (2021). In November 2017, VA launched RAMP as one of these test programs. *See, e.g.*, *Comprehensive Plan for Processing Legacy Appeals and Implementing the Modernized Appeals System*, November 2017 Update, Department of Veterans

Affairs, at 28-30, available at https://benefits.va.gov/benefits/docs/appeals-report-201711.pdf (last accessed April 20, 2022). RAMP began at the RO level[6] and "allowed for full implementation of the new process" to claimants with legacy appeals who wished to migrate to the new review system prior to February 19, 2019. *Id*. at 29. Claimants with a pending legacy appeal could voluntarily opt in to RAMP by withdrawing their legacy appeal and electing either the higher-level review lane or the supplemental claim lane. *Id*. *Accord* 38 C.F.R. § 3.2400(c)(1), (d) (2021).

### III. ARGUMENTS

Mr. Aviles-Rivera argues that the Board erred by failing to consider the 2018 NAS Update and by relying on the October 2017 VA medical opinion that he asserts is inadequate in light of the 2018 NAS Update. Appellant's Br. at 6-14; Reply Br. at 2-7; Appellant's Supplemental Memorandum of Law (Supp. Memo.) at 5-6.[7] First, he asserts that, despite his election into RAMP, the April 2017 Board remand order "expanded the scope and timeframe for adding relevant and reasonable documents in[to] the record." Appellant's Supp. Memo. at 7. Second, he argues that the NAS Updates are not the type of evidence contemplated by the Board's evidentiary record restriction found in section 7113. Oral Argument at 17:00-19:19; 20:53-22:05. Third, he argues that section 7113 is a claims processing statute that limits the time claimants are allowed to submit evidence, but that the Board's jurisdictional statute, 38 U.S.C. § 7104, is broader and mandates that the Board consider "all evidence and material of record," which he argues includes the 2018 NAS Update. *Id*. at 8:02-11:59, 25:26-27:18, 50:10-51:48. Finally, he argues that the Board's failure to consider the 2018 NAS Update in his case demonstrates an unreasonable, unfair, and unjust process that results in disparate treatment of his claim. *Id*. at 41:32-45:38; 46:54-48:22.

The Secretary argues that the Board properly did not consider the 2018 NAS Update and appropriately relied on the October 2017 VA opinion in reaching its adverse decision because Mr. Aviles-Rivera chose to pursue higher-level review and, subsequently, the direct review

---

[6] VA operated RAMP via a phased rollout beginning with eight participating ROs. The Board began adjudicating appeals under RAMP in October 2018. *See Comprehensive Plan for Processing Legacy Appeals and Implementing the Modernized Appeals System*, November 2018 Update, Department of Veterans Affairs, at 3, available at https://www.benefits.va.gov/REPORTS/AMA/CMR/2018/appeals-report-201811.pdf (last accessed April 20, 2022).

[7] On May 7, 2021, the Court ordered the parties to file supplemental memoranda of law following the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit's) issuance of *Euzebio v. McDonough*, 989 F.3d 1305 (Fed. Cir. 2021) (*Euzebio II*), *vacating and remanding sub nom. Euzebio v. Wilkie*, 31 Vet.App. 394 (2019) (*Euzebio I*).

docket—thereby closing the evidentiary record. Secretary's Br. at 9-10, 19; Secretary's Supp. Memo. at 4-12; Oral Argument at 29:44-30:39; 38:25-39:11. He argues that the veteran's attempts to create an exception to the closing of the evidentiary window—either under section 7104(a) or by characterizing the NAS Updates as something other than evidence—are unsupported. Oral Argument at 31:13-32:17. Finally, he argues that the veteran is not prejudiced by the adverse Board decision as he is free to file a supplemental claim that will allow consideration of new and relevant evidence, such as the 2018 NAS Update. Secretary's Supp. Memo. at 12-15; Oral Argument at 32:56-33:35; *see* 38 U.S.C. § 5108(a).

## IV. ANALYSIS

### A. The Closing of the Veteran's Evidentiary Record

Under the AMA, a claimant who is dissatisfied with an initial AOJ decision has several options for administrative review, and the option chosen dictates the scope of the evidentiary record to be reviewed. If a claimant chooses the higher-level review lane, the evidentiary record that is before the higher-level adjudicator is limited to the evidence that was of record in the AOJ decision being reviewed. 38 U.S.C. § 5104B(d). If, after receiving higher-level review, a claimant chooses to appeal that decision to the Board and selects the direct Board review docket, the evidentiary record that is before the Board is limited to the evidence that was of record at the time of the AOJ decision on appeal. 38 U.S.C. § 7113(a). Thus, a claimant who chooses higher-level review by the AOJ and then direct review by the Board will have the evidentiary record limited to the evidence that was of record at the time of issuance of the AOJ decision under review. *See* 38 U.S.C. §§ 5104B(d), 7113(a).

RAMP was designed to transition claimants from the legacy system to the AMA, if they so chose. *See, e.g.*, *Comprehensive Plan for Processing Legacy Appeals and Implementing the Modernized Appeals System*, November 2017 Update, Department of Veterans Affairs, at 29. Claimants who elected into AMA via RAMP, as Mr. Aviles-Rivera did, were informed that the provisions of the AMA would apply to those claims. R. at 194. *Accord* 38 C.F.R. §§ 3.2400(c)(1), 19.2(d)(3). When these claimants, such as Mr. Aviles-Rivera, selected higher-level review via RAMP they were informed that "[higher-level] review will be based upon the evidence submitted to VA as of the date of this election and VA will not seek additional evidence on [their] behalf as part of the higher-level review." R. at 194. Thus, veterans were informed that, if they elected into

7

AMA via RAMP and selected higher-level review, the evidentiary record would close as of the date of their election.

In June 2018, Mr. Aviles-Rivera opted into RAMP and into the higher-level review lane, agreeing that his claim would be reviewed based on the evidence of record at the time of his election. R. at 194. *Accord* 38 U.S.C. § 5104B(d). Following the September 2018 higher-level review decision, Mr. Aviles-Rivera chose to appeal that decision to the Board and selected the direct review docket; at that time, he was informed that Board review of his case would be based on the evidence of record at the time of the September 2018 prior decision. R. at 33-34; *see* 38 U.S.C. § 7113(a).[8]

Because the 11th NAS Update was published in November 2018, after Mr. Aviles-Rivera's June 2018 RAMP election and after the RO's September 2018 higher-level review decision, it was not part of the record when the RO issued its higher-level review decision. Mr. Aviles-Rivera selected the direct review docket, R. at 33-34, agreeing that the Board would not consider additional evidence beyond what was before the RO when it made its September 2018 decision. Thus, given the statutory record restrictions applicable to Mr. Aviles-Rivera's case, the Board could not consider the 11th NAS Update in rendering its decision. *See* 38 U.S.C. § 7113(a).

## B. The April 2017 Board Remand Order

Mr. Aviles-Rivera argues that, because the April 2017 Board order directed that on remand a VA examiner should consider NAS Updates, all NAS Updates were constructively before the August 2019 Board—despite the veteran's choice to opt into the RAMP program and his elections of higher-level and direct review with their attendant evidentiary record restrictions. Constructive possession provides that evidence that is within VA's control and that could reasonably be expected to be part of the evidentiary record is constructively part of the administrative record. *Euzebio II*, 989 F.3d at 1319 (citing *Lang v. Wilkie*, 971 F.3d 1348, 1353-55 (Fed. Cir. 2020); *Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992)). Because the 2018 NAS Update could not reasonably be expected to be part of the record given the circumstances of his case, the veteran's argument is not convincing.

---

[8] The Board found that the evidentiary record closed as of June 18, 2018, the date of Mr. Aviles-Rivera's RAMP election, R. at 6; *see* R. at 194, rather than the date of the September 2018 higher-level review decision as per 38 U.S.C. § 7113(a). In any event, the November 2018 11th NAS Update issued well after both of those dates.

8

Although the April 2017 Board remand directed that a VA examiner "consider NAS Updates," R. at 909 (and specifically those "NAS Updates which concluded that there was 'limited or suggestive evidence of an association' between hypertension and herbicide exposure"), that remand order did not and could not have referred to the November 2018 11th NAS Update (which elevated hypertension to the "sufficient evidence of an association" category) because that Update was not in existence at that time. And even assuming for the sake of argument that Mr. Aviles-Rivera is correct that the 2017 Board remand order should be interpreted as requiring that a VA examiner consider later-issued NAS Updates, the subsequent VA examination took place in October 2017, prior to issuance of the November 2018 NAS Update, and could not have considered that Update.

Furthermore, the Board gave no indication that it intended to delay development and readjudication on remand until further NAS Updates issued, *see* R. at 902-10, and the Court will not impute such an intent as to the April 2017 Board order. It is inconceivable that the 2017 Board remand order intended that future development and readjudication of Mr. Aviles-Rivera's remanded claim be delayed indefinitely until further NAS Updates issued. Such inaction on remanded claims involving herbicide exposure would result in delay for Vietnam veterans throughout the VA claims and appeals system and would be counter to the intent of the AMA to fix the long delays resulting from the multiple evidence submissions and reviews in the legacy system. *See* H.R. Rep. No. 115-135, at 5 (2017) (noting that under the legacy appeal system, it could take five years to receive a Board decision); 83 Fed. Reg. at 39,818 ("[A]ppeals [under the legacy system] are non-linear and may require VA staff to engage in gathering and receiving evidence and re-adjudicating appeals based on new evidence[, which] . . . can add years to the appeals process, as appeals churn between the Board and the [AOJ].").

Furthermore, Mr. Aviles-Rivera's RAMP opt-in election informed him that

[b]y completing this form . . . I am withdrawing all eligible pending compensation appeals in their entirety, and any associated hearing requests, to participate in VA's RAMP initiative and have my eligible appeals proceed under the new process described in the Appeals Modernization Act. *I understand that I cannot return to the current (legacy) appeals system for the issues withdrawn.*

R. at 194. In choosing the higher-level review option on this form, the veteran indicated that he understood that this "[higher-level] review will be based upon the evidence submitted to VA as of the date of this election and VA will not seek additional evidence on [his] behalf as part of the higher-level review." *Id.* This notice provided to the veteran seriously weakens his position that

9

the April 2017 Board remand instruction to "consider the NAS Updates which concluded that there was 'limited or suggestive evidence of an association' between hypertension and herbicide exposure," R. at 909, meant that all NAS Updates, including the 2018 Update, were constructively before the Board in August 2019.

To summarize, after the April 2017 Board remand occurred, Mr. Aviles-Rivera elected into AMA via RAMP and chose the higher-level review lane for his claim. The form that he completed at that time informed him that such a choice would withdraw his appeal from the legacy system and place it in the AMA system and limit the record before the higher-level adjudicator to the evidence that was before VA on the date of his election. *See* R. at 194. These facts run counter to the veteran's argument concerning the 2017 Board remand order.

Moreover, in February 2019 the veteran chose to have the Board directly review the AOJ decision based on the record that was before the AOJ in September 2018. R. at 34. But the 11th NAS Update was published in November 2018, 2 months *after* the AOJ's higher-level review decision, so it could not have been before the higher-level adjudicator. And Mr. Aviles-Rivera's choice to have the Board directly review the higher-level review decision without additional evidence meant that the Board could not consider evidence that was not of record in September 2018, including the 11th NAS Update. Therefore, Mr. Aviles-Rivera's arguments that the April 2017 remand order gave the Board constructive possession of the 11th NAS Update are unavailing. Given his review choices and the date of the NAS Update, the NAS Update could not reasonably be expected to be part of the administrative record.

## C. NAS Updates Are Evidence

Mr. Aviles-Rivera next argues that, because Congress mandated VA to consider NAS Updates, the Updates are excluded from the evidentiary record restriction of section 7113(a). He argues that the NAS Updates are mandated by Congress, making them foundational authoritative documents that transcend evidentiary restrictions. Oral Argument at 17:00-19:19 (referring to *Euzebio I* and *Euzebio II*). To that end, he asserts that the NAS Updates are not "evidence" as contemplated by section 7113(a) and thus the Board is not barred by section 7113(a) from considering the 11th NAS Update in his case. The veteran's arguments are unpersuasive.

Evidence is defined as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact . . . ." *Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see, e.g.*, *Burden v. Shinseki*, 727 F.3d 1161, 1167 (Fed. Cir.

2013); *Robinette v. Brown*, 8 Vet.App. 69, 78 (1995) (both relying upon *Black's Law Dictionary*'s definition for evidence). As noted earlier, Congress ordered periodic NAS Updates to provide VA with a summary of recent scientific research regarding diseases suspected to be associated with herbicide exposure. Pub. L. No. 102-4, 105 Stat. 11, § 3. Mr. Aviles-Rivera fails to support his contention that NAS Updates should not be considered "evidence," particularly since he seeks to use the 2018 NAS Update in precisely the manner that defines evidence: to prove his theory of service connection, to wit, that his herbicide exposure in Vietnam caused his hypertension. *See Evidence*, BLACK'S LAW DICTIONARY; *see also* Oral Argument at 24:26-:32, 43:54-44:46 (arguing that the 11th NAS Update is outcome-determinative and demonstrates that service connection for his hypertension is warranted). This very contention demonstrates that the NAS Updates are evidentiary in nature.

Moreover, the Federal Circuit in *Euzebio II* specifically referenced NAS Updates in the context of evidence, *Euzebio II*, 989 F.3d at 1321, 1324 n.10, as Mr. Aviles-Rivera acknowledges, Oral Argument at 19:11-20:53. Nowhere in *Euzebio II* did the Federal Circuit characterize NAS Updates as anything but evidence. And although Mr. Aviles-Rivera considers NAS Updates as foundational documents, they are not statutory or regulatory provisions nor can they be considered as authority that is binding on VA. Thus, the Court rejects Mr. Aviles-Rivera's argument that NAS Updates are not "evidence" contemplated by section 7113(a).

### D. There Is No Confusion as to the Meaning of Record Evidence

Mr. Aviles-Rivera argues that, even if the Board was prohibited from reviewing the 11th NAS Update under section 7113(a), the Board should have considered the report under section 7104(a). Section 7104(a) provides that decisions of the Board "shall be based on the entire record of proceedings and upon consideration of all evidence and material of record and applicable provisions of law and regulation." Mr. Aviles-Rivera asserts that section 7113(a), which provides that for cases on the Board's direct review docket the evidentiary record shall be limited to the evidence of record at the time of the AOJ decision on appeal, is a claims processing rule. In contrast, he asserts that section 7104 is a broad jurisdictional statute that allows for consideration of an NAS Update without regard to whether that Update was of record at the time of the AOJ decision on appeal.

The Court agrees with the Secretary that the proper reading of these provisions is that sections 7104 and 7113 work in concert and must be read harmoniously. Section 7104(a) does not

proscribe the evidence and materials that are before the Board; instead, it indicates that the Board must consider everything that is properly in the record before it. Mr. Aviles-Rivera's view of the statutes would render the evidentiary record restrictions of section 7113 meaningless and undermine Congress's intent to impose such a restriction as part of AMA. *See Andrews*, 34 Vet.App. at 158 (finding no ambiguity in Congress's intent in promulgating section 7113(a) that in the direct review docket, the Board may not consider evidence submitted after the AOJ decision being reviewed). Thus, we reject the veteran's argument that Congress intended sections 7104(a) and 7113 to operate independently to the extent that section 7104(a) would serve as a loophole to allow evidence excluded under section 7113 to enter the record.

Moreover, Mr. Aviles-Rivera overlooks a significant fact—that when Congress added section 7113 through the AMA it made a corresponding modification to section 7104(d), requiring that each decision of the Board include a general statement reflecting whether evidence was not considered in making the decision because the evidence was received at a time when not permitted under section 7113. 38 U.S.C. § 7104(d)(2)(A); *see* Pub. L. 115-55, 131 Stat. at 1114, § w. In other words, Congress modified section 7104(d) to require the Board to inform claimants that evidence received after the time prescribed in section 7113 was not considered.[9] Because Congress expressly acknowledged in section 7104 that certain evidence would not be considered if it did not comport with the restrictions of section 7113, the Court cannot agree with Mr. Aviles-Rivera's section 7104(a) argument. Thus, the veteran's argument in this regard fails.[10]

### E. RAMP/AMA Evidence Restrictions Do Not Violate Fair Process

Mr. Aviles-Rivera argues that principles of fair process dictate that the Board should have considered the 11th NAS Update in his case. He argues that there is disparate treatment of veterans like him because he is aware of at least one case where a veteran opted in to RAMP, selected the direct review docket, and the Board remanded the case for the AOJ to consider the 11th NAS Update. Oral Argument at 44:47-45:37, 47:31-49:41. However, he acknowledges that the basis for

---

[9] As a result of this provision, the Board informed Mr. Aviles-Rivera, albeit referencing claims other than hypertension, that, because additional "evidence was added to the claims file during a period of time when new evidence was not allowed," that evidence was not considered. R. at 6.

[10] In furtherance of his argument concerning sections 7104(a) and 7113(a), Mr. Aviles-Rivera asserts that section 7113(a) is a claims-processing rule subject to waiver by the Board. Oral Argument at 8:02-11:59. Because we disagree with him and conclude that there is no meaningful distinction concerning record restrictions in sections 7104(a) and 7113(a), we do not address this argument.

the Board remand in the other case was a pre-decisional duty-to-assist error not present in his own case. *See* 38 U.S.C. § 5103A(f)(2)(A) (providing that the Board shall remand a claim to the AOJ for correction of a pre-decisional duty-to-assist error).[11] Due to the factual distinction between the two cases, we reject this fair process argument.

Mr. Aviles-Rivera additionally argues that the Board violated fair process because, although the 2018 NAS Update was readily available to VA, the result under the statute is that the Board must ignore the report and deny his claim. He asserts that following the AMA record restrictions in his case does not reflect a veteran-friendly system and cannot be what Congress intended. However, the veteran fails to explain how the evidentiary record restriction is an unfair flaw in the new review process rather than an intended feature of that process. In adopting the AMA, Congress sought to reduce a key inefficiency in the legacy appeals process—the continuous cycle of evidence-gathering and readjudication of the same claim—while still protecting claimants' rights. *Military-Veterans Advocacy*, 7 F.4th at 1118-19 (citing S. Rep. No. 115-126, at 27, 29 (2017); H.R. Rep. No. 115-135, at 5); *see Andrews*, 34 Vet.App. at 156.

In adopting the AMA, Congress intended to streamline the appeals process and provide claimants with choices regarding how their claims should proceed. *Military-Veterans Advocacy*, 7 F.4th at 1119; *Andrews*, 34 Vet.App. at 156. One of those choices is deciding when the evidentiary record closes. *See* 38 U.S.C. §§ 5103A(e) (describing when VA's duty to assist applies), 5104B(d) (describing the evidentiary record for higher-level review), 7113 (describing the evidentiary record for Board appeals). As discussed, Mr. Aviles-Rivera opted to participate in this new review system and later, after receiving his higher-level review decision, he chose the direct review Board docket that provided that the evidentiary record would be limited. R. at 33-34. Because the 11th NAS Update was not in existence in September 2018, the RO could not have considered it in rendering its higher-level review decision and, due to Mr. Aviles-Rivera's choice to elect direct Board review, the Board was prohibited from considering it in rendering its August 2019 decision. The Court is not convinced that this particular aspect of the new system violates fair process—in fact, we are convinced that it operated in Mr. Aviles-Rivera's case as intended.

---

[11] To the extent that Mr. Aviles-Rivera argues that in the other veteran's case the Board undertook "gymnastics" in finding a pre-decisional error to suggest that no pre-decisional duty to assist error existed, Oral Argument at 44:47-45:37, he did not provide a copy of this other Board decision. Nevertheless, even accepting the veteran's assertion as true, he fails to carry his burden to demonstrate disparate treatment.

Mr. Aviles-Rivera further argues that the modernized review system is unfair because if the Board ignores the 2018 NAS Update he must file a supplemental claim and wait for it to be adjudicated. But again, he fails to explain how this procedure is a flaw and not an intended feature of the AMA. Under the AMA, claimants may sequentially pursue different lanes of administrative review while maintaining the earliest effective date of benefits, so long as they continue to pursue that claim within prescribed time limits. 38 U.S.C. § 5110(a)(2)-(3); *see Military-Veterans Advocacy*, 7 F.4th at 1119-20; 38 C.F.R. § 3.2500(c), (h) (2021). This means that if claimants receive an unfavorable decision they can preserve the earliest possible effective date of benefits by selecting a more appropriate administrative review option within 1 year of the unfavorable decision. *See* 38 U.S.C. § 5110(a)(2)-(3); *Military-Veterans Advocacy*, 7 F.4th at 1119-20; 38 C.F.R. § 3.2500(c), (h). In this case, Mr. Aviles-Rivera can preserve the earliest effective date for his hypertension claim by filing a supplemental claim with the AOJ within 1 year of this Court's decision. *See* 38 U.S.C. § 5110(a)(2)(E); 38 C.F.R. § 3.2500(c)(4), (h)(1).[12]

Mr. Aviles-Rivera acknowledges that he can file a supplemental claim but argues that doing so would add further delay to the adjudication of his claim. However, he fails to persuade us that filing a supplemental claim would cause significant additional delay in his case, particularly since he also argues that VA failed in its duty to assist, *see* section IV.F below, and correction of such an error would necessitate a Court remand followed by a Board remand to the RO, Appellant's Br. at 12-14 (arguing that the October 2017 VA opinion is inadequate). Thus, we remain unpersuaded as to his final fair process complaint.

F. Mr. Aviles-Rivera's Remaining Arguments Fail

In addition to his arguments that the Board erred by failing to consider the 2018 NAS Update, Mr. Aviles-Rivera's other assertions of Board error likewise hinge on the Board having some obligation to consider the 2018 NAS Update. He argues that the Board failed to ensure compliance with its April 2017 remand order when it failed to consider the 2018 NAS Update. Appellant's Br. at 6-8 (citing *Stegall v. West*, 11 Vet.App. 268, 271 (1998)). And he argues that the October 2017 VA examiner's opinion is based on an inaccurate and outdated premise as

---

[12] During the pendency of this appeal, the Federal Circuit invalidated 3.2500(b), which prohibited concurrent election of judicial and administrative review. *Military-Veterans Advocacy*, 7 F.4th at 1141-45. To the extent that § 3.2500(c)(4) also appears to prohibit concurrent judicial and administrative review, the Secretary averred during oral argument that, although the Federal Circuit did not invalidate subsection (c)(4), VA's position is that, following the Federal Circuit's decision, claimants need not wait for a judicial decision before filing a supplemental claim. Oral Argument at 34:00-35:32; *see* Secretary's Clarification of Discussion at Oral Argument (Sept. 14, 2021).

demonstrated by the 2018 NAS Update and, therefore, the Board erred by relying on it to deny the claim. *Id*. at 12-14 (citing *Reonal v. Brown*, 5 Vet.App. 458, 461 (1993)). Because the Court concludes that the Board was precluded from considering the 2018 NAS Update due to the veteran's entry into RAMP and his choice that the Board directly review his claim based on the evidence of record at the time of the September 2018 prior RO decision, his remaining arguments regarding Board error must fail.

## V. CONCLUSION

After considering the parties' briefs, supplemental memoranda of law, oral argument, the record on appeal, and the governing law, the part of the August 20, 2019, Board decision that denied entitlement to service connection for hypertension is AFFIRMED. The balance of the appeal is DISMISSED.